MEMORANDUM OPINION
Opinion by Justice Schenck *373 Both Mother and Father separately appeal the termination of their parental rights to N.G. Mother challenges the sufficiency of the evidence to support the findings to support the termination of her rights to N.G. and the trial court's decision to grant the motion to quash the subpoena of N.G. Father challenges the sufficiency of the evidence to support the findings to support the termination of his rights to N.G. We affirm the trial court's judgment.
BACKGROUND
Mother and Father met in 2008 and married before N.G. was born in 2011. Five months after N.G. was born, Father went to prison for two years for a drug offense until his release in April 2014. Mother then went to jail from January to June of 2015. In September 2015, Father was arrested for a probation violation on an underlying robbery charge, and he was not released until December 13, 2015.
On October 25, 2015, a referral was made to the Department of Family and Protective Services ("CPS") as to Mother and N.G., who was approximately four years old at that time. The report stated there were allegations that Mother and others living in the home were using drugs in front of or around the child and that there was hoarding in the home. A Department investigator visited the home and, although there was some clutter and mess, she saw nothing dangerous. Mother told the Department investigator that she was employed; that she and N.G. lived with a woman who owned the home and with Mother's adult son S.C.; and that she was not presently using drugs though she had used methamphetamine and cocaine in the past. At that time, Mother refused to provide an oral swab for a drug test. The CPS investigator saw N.G. was sleeping and appeared to be unharmed. After the visit, the CPS investigator made several unsuccessful attempts to get Mother to take a drug test.
In November 2015, the CPS investigator learned from Mother's probation officer that Mother had tested positive for drug use. Mother admitted to using methamphetamine once in October 2015, but stated N.G. was not around at that time. On November 10, CPS, Mother, and Mother's adult daughter ("Sister") met to determine where N.G. would be placed while Mother was in jail for failing her drug test. At that meeting, Mother agreed to a drug test, and it was determined that N.G. would stay with his maternal grandmother ("Grandmother") who would supervise any visits with Mother. Mother also agreed that N.G. would be tested for drugs. Despite her agreement to be tested for drugs, Mother did not ever take a drug test for CPS.
On November 17, 2015, CPS filed its original petition for protection of the child and for temporary managing conservatorship. CPS's grounds for seeking removal of N.G. were because Mother had tested positive for methamphetamines, Father was currently incarcerated, Mother failed to take a drug test after numerous requests from CPS, and "there was a long history of CPS allegations." N.G. was ultimately removed from Grandmother's home in February 2016. On May 12, 2016, CPS amended its petition to request the termination of Mother's and Father's parental rights to N.G. Although Mother and Father were married at the time CPS filed its original petition, the two divorced, and Father remarried before the case proceeded to trial. During the course of litigation, the trial *374 court ordered both Mother and Father to participate in several education, drug and alcohol treatment, and counseling services.[1]
The case proceeded to trial, which took place over several days throughout the summer of 2017.[2] At the close of CPS's case, Mother requested and was granted directed verdicts on six of the grounds in the first amended petition. Father also requested and was granted directed verdicts on nine of the grounds in the first amended petition, and was denied directed verdict as to one additional ground. At the end of trial, the trial court terminated Mother's and Father's parental rights and later signed an order terminating the parental rights of both based on findings under section 161.001(b)(1)(D), (E), and (O) of the family code. See TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), and (O). The order also appointed CPS as permanent managing conservator of N.G.
DISCUSSION
I. Termination of the Parent-Child Relationship
A court may terminate a parental relationship if it finds by clear and convincing evidence (1) one or more statutory grounds for termination and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)-(2). Clear and convincing evidence is proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Id. § 101.007. Here, the trial court found CPS had proven by clear and convincing evidence that both Mother and Father had:
knowingly placed or knowingly allowed the child [N.G.] to remain in conditions or surroundings that endanger the physical or emotional wellbeing of the child; [ TEX. FAM. CODE § 161.001(b)(1)(D) ]
engaged in conduct or knowingly placed the child [N.G.] with persons who engaged in conduct that endangers the physical or emotional well-being of the child; [ TEX. FAM. CODE § 161.001(b)(1)(E) ]
failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child [N.G.] who *375 has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [ TEX. FAM. CODE § 161.001(b)(1)(O) ]
The trial court also found that the termination of Mother's and Father's parental rights was in the best interest of N.G. Id. § 161.001(b)(2).
Both Mother and Father raise legal and factual sufficiency issues. In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a "firm belief or conviction that its finding was true." In re J.F.C. , 96 S.W.3d 256, 266 (Tex. 2002). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." Id. In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. Id.
In a factual sufficiency review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. Id. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." Id.
Mother and Father also challenge the trial court's findings that termination of their parental rights is in N.G.'s best interest. A strong presumption exists that the best interest of the child will be served by keeping the child with a parent. In re R.R. , 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a). Several statutory factors relevant to this appeal should be taken into account in evaluating a parent's willingness and ability to provide the child with a safe environment, including the child's age and vulnerabilities; results of psychological evaluations of the parents; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to complete counseling services and to cooperate with an agency's close supervision; and the willingness and ability of the child's family to effect positive and personal changes within a reasonable period of time. Id. § 263.307(b)(1), (6), (8), (10), (11).
In addition to these statutory factors, we look to other non-exclusive factors relevant to the best-interest determination, including (1) the child's desires, (2) the child's present and future emotional and physical needs, (3) the present and future emotional and physical danger to the child, (4) the parent's parental abilities, (5) the programs available to assist a parent to promote the child's best interest, (6) the parent's plans for the child, (7) the stability of the home, (8) the parent's acts or omissions that may indicate the parent-child relationship is not a proper one, and (9) any excuse for the parent's acts or omissions. Holley v. Adams , 544 S.W.2d 367, 371-72 (Tex. 1976). A best-interest finding need not be supported by evidence of every Holley factor, particularly if there is undisputed evidence that the parental *376 relationship endangered the child's safety. See In re C.H. , 89 S.W.3d 17, 27 (Tex. 2002). Evidence of section 161.001(b)(1) termination grounds may also be probative of a child's best interest. See ids="9318292" index="9" url="https://cite.case.law/sw3d/89/17/#p27">id. at 28.
II. Mother
Mother raises four issues in her appeal of the termination of her parental rights to N.G. In her first and third issues, she challenges the sufficiency of the evidence to support the three findings under 161.001(b)(1)(D), (E), and (O). In her second issue, she challenges the sufficiency of the evidence to support a finding that the termination was in the child's best interest. Fourth, she urges the trial court erred in granting CPS's motion to quash her subpoena requiring N.G. to testify.
First, Mother argues the evidence was legally and factually insufficient to show that she failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child N.G. See TEX. FAM. CODE § 161.001(b)(1)(O). Mother acknowledges that the record contains permanency hearing orders dated May 10, 2016; August 9, 2016; and December 7, 2016, which all provided certain services for Mother and Father to complete.
Mother was ordered to participate and successfully complete:
parenting education as recommended by CPS;
psychological evaluation or psycho social evaluation as recommended by CPS;
provide CPS with a list of all prescription medications and notify CPS in writing of any medication changes;
bonding assessment of mother and child if recommended by CPS;
counseling;
drug/alcohol assessment and follow all recommendations;
participate in and successfully complete an inpatient drug/alcohol treatment program approved by CPS and follow all after-care recommendations;
random drug and alcohol urinalysis/hair strand tests and oral swabs;
maintain stable, suitable housing;
maintain suitable, stable, legal employment;
and follow through with recommendations made by relevant service providers.
Mother argues the permanency hearing orders failed to "specifically establish[ ] the actions necessary for [Mother] to obtain the return of [N.G.]." See TEX. FAM. CODE § 161.001(b)(1)(O). She notes that the orders did not say where the services were to occur, when she was to complete the services by, or what providers were approved or not approved. Mother points out that the service plans referenced within the orders were not offered as evidence at trial and that CPS failed to request that the trial court take judicial notice of the file containing the service plans.
Although the service plans were not admitted at trial, we may presume the trial court took judicial notice of its own files. See In re S.V. , 05-12-00663-CV, 2014 WL 4294962, at *5 n.9 (Tex. App.-Dallas Aug. 21, 2014, pet. denied) (mem. op.). We also note that Mother does not argue that the service plans themselves were not sufficiently specific. Further, there is evidence in the record to support a finding that Mother did not comply with the permanency hearing orders or the service plans. All of the permanency hearing orders state Mother "has not complied with the case plan of services prepared for the family and the child(ren) to the extent that the child(ren) can be returned home." At *377 trial, when questioned whether she had completed all of her services in the case, Mother admitted she had not done any individual counseling, that she had not complied with all of the random drug testing by CPS, and that she had not participated in an inpatient drug and alcohol treatment program. Despite the fact that the permanency hearing orders required that Mother to receive approval from TDFPS and sign a release of information so that TDFPS may speak to her service provider, Mother admitted that she did not receive approval from CPS or sign a release of information for CPS for the parenting education she completed. Mother also acknowledged that CPS had informed her that the classes she took online would not meet her requirements.
We conclude the evidence is both legally and factually sufficient to support the trial court's finding that Mother failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child N.G. See TEX. FAM. CODE § 161.001(b)(1)(O). In light of our conclusion on Mother's first issue, we need not address her third in which she challenges the sufficiency of the evidence to support the trial court's findings that Mother knowingly placed or knowingly allowed N.G. to remain in conditions or surroundings that endanger the physical or emotional wellbeing of N.G., or that she engaged in conduct or knowingly placed N.G. with persons who engaged in conduct that endangers the physical or emotional well-being of N.G. See id. § 161.001(b)(1)(D), (E) ; In re S.F. , 32 S.W.3d 318, 320 (Tex. App.-San Antonio 2000, no pet.) (only one finding alleged under section 161.001(b)(1) necessary to judgment of termination).
We next address Mother's second issue, in which she challenges the sufficiency of the evidence to support a finding that the termination was in the child's best interest. She relies on the evidence that N.G. had indicated a desire to be with his parents, Mother had completed at least some of the ordered services, and Mother had established housing by living with Grandmother. She argues there is an absence of evidence that at the time of trial, N.G.'s emotional or physical well-being would be at risk. Mother also urges the presumption that it is in the best interest of a child to be with his or her parents.
The following evidence supports the trial court's finding that termination of Mother's rights was in the best interest of N.G. A clinical psychologist who had performed a psychological evaluation of Mother testified she diagnosed Mother with methamphetamine abuse, neglect of a child, and "difficult with legal circumstances." Father testified that before N.G.'s removal, he and Mother and others who lived with them used drugs in the garage of the house they were living in, although not in the same room as N.G. The CPS caseworker assigned to this case testified Mother had told her she had engaged in drug use beyond the single instance of drug use Mother admitted to from October 2015.
Mother testified that, at the time of trial, the State had filed a motion to revoke her probation. CPS offered evidence that the charges Mother faced included possession of methamphetamine and theft, both of which were alleged to have taken place on September 9, 2016, which was during the pendency of this case, but prior to trial. While Mother testified that she was likely to serve approximately sixty days in jail based on a plea deal from the State, she admitted that the range of punishment for at least two of the offenses she was alleged to have committed extended up to ten years in prison. Mother also admitted that during the pendency of the case, she had been arrested six times.
*378 Mother stated that her plan for N.G. was to leave him with family, which she said included Father, while she served approximately sixty days in jail. She testified that she would most likely leave N.G. with either her mother (Grandmother) or her adult daughter (Sister), both of which she admitted had been ruled out by CPS for possible placement.[3] Additionally, the clinical psychologist testified that Grandmother was not very cooperative with the process of performing a psychological evaluation of N.G. and that instead the CPS caseworker transported N.G. to the appointments. The CPS caseworker testified that termination of Mother's parental rights was in N.G.'s best interest because he needed a stable environment that neither parent had been able to provide N.G. in the past when N.G. lived with friends or relatives of Mother or Father when she or he was incarcerated. The clinical psychologist recommended continued therapy for both N.G. and Mother, but as noted above in the analysis of section 161.001(b)(1)(O), Mother had not completed the ordered individual therapy at the time of trial.
N.G.'s counselor testified that over at least forty evaluations, N.G. occasionally-"handful of times"-expressed he would like to return to live with Mother and Father, but he more often stated that he did not want to rejoin his biological family and instead wanted to stay with his foster family. When interviewed by the trial judge in chambers, N.G. expressed that he wanted to live with his foster family "forever." N.G.'s attorney ad litem testified he had discussed with N.G. on multiple occasions and at different times that he wanted to remain with and by adopted by the foster family he was living with at the time of trial.
We conclude the foregoing is sufficient to support the court's best-interest finding. Accordingly, we overrule Mother's second issue.
In her fourth and final issue, Mother urges the trial court abused its discretion in granting the joint motion from CPS and N.G.'s attorney ad litem to quash her subpoena requiring N.G. to testify. Prior to trial, Mother filed a subpoena ordering the CPS caseworker assigned to this case and CPS to present N.G. (then approximately five years old) to testify at trial. CPS, N.G.'s attorney ad litem, and Court Appointed Special Advocates ("CASA") filed a joint motion to quash that subpoena. The joint motion to quash included an affidavit from a licensed counselor who had been counseling N.G. for nearly a year. The counselor's affidavit stated his opinion that based on N.G.'s youth, testifying in a courtroom would not be in his best interest. After argument and briefing, the trial court granted the motion to quash and instead conferred with N.G. in chambers. That conference was transcribed, sealed, and made a part of the reporter's record in this case.
Mother argues that the trial court erred by not conducting a hearing to determine N.G.'s competency and that the decision to quash her subpoena resulted in her being unable to present her case. She notes that N.G.'s counselor testified that N.G. had expressed sadness about not seeing Mother and that he was happy about the possibility of returning to live with Mother and Father. She urges that the trial court's decision meant that she was prevented from pursuing this line of questioning and *379 that instead the child was interviewed in chambers such that Mother was unable to cross-examine the child.[4]
Mother does not cite us to, and we have not found, any authority requiring a trial court to conduct a hearing on the competency of a child to testify in matters relating to whether his or her parents' parental rights should be terminated.[5] However, we need not decide whether the trial court erred by failing to conduct a competency hearing or even by interviewing the five-year-old N.G. in chambers instead of permitting him to be cross-examined. Although Mother complains about the lack of opportunity to cross-examine N.G., she does not make any argument as to what questions she would have asked of N.G. that the trial court did not ask in chambers, nor did she make any offer of proof at trial or file a formal bill of exception as to what information she would have elicited from N.G. or explain why the trial court's decision would be subject to reversal even if the testimony would have developed as she hoped. See TEX. R. EVID. 103(a) ; Sink v. Sink , 364 S.W.3d 340, 347 (Tex. App.-Dallas 2012, no pet.) (requiring party challenging exclusion of evidence to make offer of proof or file formal bill of exception to preserve issue on appeal); Simmons v. State , 100 S.W.3d 484, 495 (Tex. App.-Texarkana, pet. ref'd). Accordingly, she has failed to preserve this issue for appeal, and we discern no bases for reversal in any event.
III. Father
Father first notes the complete text of subsection O of section 161.001 requires a finding that the parent
failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child [N.G.] who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.
TEX. FAM. CODE § 161.001(b)(1)(O).
Father urges CPS failed to prove by clear and convincing evidence that he failed to comply with the provisions of a court order that specifically established the actions necessary for Father to obtain the return of N.G. Like Mother, Father argues CPS failed to request the trial court take judicial notice of its file or to offer any service plans into evidence. As noted above, we may presume the trial court took judicial notice of its own files. See In re S.V. , 2014 WL 4294962, at *5 n.9. Father next argues that the record contains insufficient evidence of his failure to comply with a court order. However, the permanency hearing orders admitted into *380 evidence at trial indicate Father has not complied with the case plan of services. Father also testified that he had not complied with all of the drug testing ordered, he had not responded to CPS's requests to view his home, and he was not employed at the time of trial, despite the fact that the permanency hearing orders required Father to participate and successfully complete random drug testing and to maintain stable, suitable housing and legal employment. Father provided many certificates of completion of various services and programs he had completed during the pendency of this case. He also provided photographs of his residence and explained he had been unable to maintain a job because he was caring for his terminally ill mother.
Regardless of any evidence of Father's partial or substantial compliance or explanations for failure to comply with the trial court's orders, section 161.001(b)(1)(O) does not "make a provision for excuses" for a parent's failure to comply with the trial court's order, nor does it "provide a means of evaluating partial or substantial compliance with a plan." See In re S.Y. , 435 S.W.3d 923, 928 (Tex. App.-Dallas 2014, no pet.). The permanency hearing orders and Father's own testimony establish that he failed to comply with the court's orders. Accordingly, we conclude the evidence is legally and factually sufficient to establish Father's failure to comply with court's orders.
Father argues N.G. was not removed from him or Mother for the abuse or neglect of N.G. because at the time of N.G.'s removal, Father was incarcerated and thus N.G. could not have been removed from him. He further urges there was no evidence that N.G. was abused or neglected by Mother. As for Father's argument that there was no evidence N.G. was removed from him, the supreme court decided in similar circumstances that evidence that a child was removed from the mother when the mother was incarcerated supported a finding under section 161.001(b)(1)(O). See In re E.C.R. , 402 S.W.3d 239, 248 (Tex. 2013) (concluding evidence that "[Mother was incarcerated and unable to care for E.C.R.," among other things, established child was removed from mother under chapter 262 for abuse or neglect). As for a lack of evidence of abuse or neglect by Mother, the record reflects one of the reasons for removing N.G. from Mother's care was her positive test for methamphetamine use reported by Mother's probation officer. See id. ("Consistent with chapter 262's removal standards, 'abuse or neglect of the child' necessarily includes the risks or threats of the environment in which the child is placed."). Additionally, the CPS investigator who testified regarding the initial removal stated it was contrary to N.G.'s emotional and physical well-being to stay in the care of his mother. Accordingly, we conclude the evidence is legally and factually sufficient to establish that N.G. was removed under Chapter 262 from Mother for the abuse or neglect of N.G. See ids="7092544" index="19" url="https://cite.case.law/sw3d/402/239/#p248">id.
We overrule Father's first issue. In light of our conclusion on Father's first issue, we need not address her second in which he challenges the legal and factual sufficiency of the evidence to support the trial court's findings under sections 161.001(b)(1)(D) and (E). See id. § 161.001(b)(1)(D), (E); In re S.F. , 32 S.W.3d 318, 320 (Tex. App.-San Antonio 2000, no pet.) (only one finding alleged under section 161.001(b)(1) necessary to judgment of termination).
In his third and final issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights was in the best interest of N.G. Father points to evidence that N.G. had *381 expressed conflicting desires as to whether he wanted to return to live with Mother and Father or to remain with his foster family and argues that any controverting evidence was not clear and convincing. He further pointed to evidence that Father had a bond with N.G. and that N.G. would go through a significant grieving process if Father's rights were terminated. Finally, he urges that CPS has many tools and programs at its disposal to promote N.G.'s best interest and to assist Father and N.G. in the future.
The following evidence supports the trial court's finding that termination of Father's rights was in the best interest of N.G. The clinical psychologist who performed a psychological evaluation of Father testified Father missed and rescheduled several appointments. Despite those missed appointments, the clinical psychologist was able to evaluate Father and to testify as to his childhood history of abuse and neglect, as well as Father' history of psychiatric hospitalization and suicide attempts. Father also admitted to missing several scheduled visits with N.G. The clinical psychologist also testified she recommended Father engage in individual therapy to address Father's childhood history of abuse and neglect and how that affects N.G.'s development. She also recommended continued therapy for N.G. During trial, Father admitted that he used to have a drug problem, but never sought individual counseling for his past drug use or more recent drug use. Father admitted to using meth six months prior to trial and to using marijuana a month prior to trial. At each time of Father's admitted drug use, he was on probation and subject to permanency hearing orders that required him to submit to drug testing, which he admitted he had missed at times.
N.G.'s counselor testified that over at least forty evaluations, N.G. occasionally-a "handful of times"-expressed he would like to return to live with Mother and Father, but he more often stated that he did not want to rejoin his biological family and instead wanted to stay with his foster family. When interviewed by the trial judge in chambers, N.G. expressed that he wanted to live with his foster family "forever." N.G.'s attorney ad litem testified he had discussed with N.G. on multiple occasions and at different times that he wanted to remain with and by adopted by the foster family he was living with at the time of trial.
The CPS caseworker assigned to this case testified her opinion that termination of Father's parental rights was in N.G.'s best interest because he needed a stable environment that neither parent had been able to provide N.G. in the past when N.G. lived with friends or relatives of Mother or Father when she or he was incarcerated. She based her opinion in part on the fact that Father had admitted to drug use since his release from jail. According to Father, he had been in jail approximately half of N.G.'s life at the time of trial. During the pendency of the case, Father was in jail again from June to November 2016. We conclude the foregoing is sufficient to support the trial court's finding that termination of his parental rights was in the best interest of N.G.
We overrule Father's third and final issue.
CONCLUSION
We affirm the trial court's judgment.

On May 10, 2016, Mother was ordered to participate and successfully complete or provide: parenting education; psychological evaluation; a list of all prescription medications; bonding assessment of Mother and N.G.; counseling; drug/alcohol assessment and follow all recommendations; inpatient drug/alcohol treatment program approved by CPS and follow all after-care recommendations; random drug and alcohol urinalysis/hair strand tests and oral swabs; maintain stable, suitable housing; and maintain suitable, stable, legal employment.
The same day, Father was ordered to participate and successfully complete or provide: parenting education; psychological evaluation; a list of all prescription medications; bonding assessment of Father and N.G.; counseling; drug/alcohol assessment and follow all recommendations; inpatient drug treatment program approved by CPS and follow all after-care recommendations; random drug and alcohol urinalysis/hair strand tests and oral swabs; anger management or adult aggression management class approved by CPS; New Day Fatherhood Program or Father FOCUS program; maintain stable, suitable housing; and maintain suitable, stable, legal employment.

The trial court's final order states the trial court heard proceedings on May 16, June 1, June 15, June 16, June 20, July 5, and August 25, but the reporter's record reflects the following dates: May 16, June 1, June 15, June 16, June 20, June 22, June 26, and August 25. We note that the June 22 date is when the trial court conferenced with N.G. in chambers. The other date discrepancy between June 26 and July 5 is not material to our determination of the appellants' issues.

CPS ruled out Sister because her husband "had not been on probation long enough and then ... he [had not] been off long enough of probation." Neither Sister nor Grandmother testified at trial.

Additionally, Mother frames the issue as analogous to preventing a criminal defendant from questioning a potential accuser. However, Mother does not cite us to any evidence in the record to support that N.G. accused her or Father of any abuse.

The family code provides that in the conservatorship context, on the application of a party, the trial court shall interview in chambers a child 12 years of age or older and may interview in chambers a child under 12 years of age regarding issues of conservatorship, possession, access, and any other issue in the suit affecting the parent-child relationship. See Tex. Fam. Code Ann. § 153.009(a), (b). Thus, in at least the context of conservatorship and upon application, the family code mandates trial courts confer with children 12 years and older in chambers and permits trial courts the discretion to confer in chambers with children under 12 years of age. See itation index="23" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20153.009">id. We note, too, that N.G. was far below the age of 12 at the time Mother wished for him to appear in court and be subjected to cross-examination.