**AFFIRM; and Opinion Filed August 30, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01255-CV

### IN THE INTEREST OF N. G., A CHILD

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-54747-2012**

# MEMORANDUM OPINION ON REMAND

Before Justices Schenck, Partida-Kipness,[1] and Carlyle[2]
Opinion by Justice Schenck

This appeal of a termination of parental rights is before us on remand from the Texas Supreme Court. Both Mother and Father separately appealed the termination of their parental rights to N.G. Mother challenged the sufficiency of the evidence to support the trial court's findings in support of termination of her rights to N.G. and the trial court's decision to grant a motion to quash a subpoena she issued to N.G.[3] Father challenged the sufficiency of the evidence to support the trial court's findings in support of termination of his rights to N.G.[4]

---

[1] The Honorable Justice Robbie Partida-Kipness succeeded the Honorable David Evans, a member of the original panel. Justice Partida-Kipness has reviewed the briefs and the record before the Court.

[2] The Honorable Justice Cory L. Carlyle succeeded the Honorable Douglas Lang, a member of the original panel. Justice Carlyle has reviewed the briefs and the record before the Court.

[3] In four issues, Mother challenged the sufficiency of the evidence to support the three findings under 161.001(b)(1)(D), (E), and (O) and the finding that the termination was in the child's best interest, and urged the trial court erred in granting CPS's motion to quash her subpoena requiring N.G. to testify.

[4] In three issues, Father challenged the sufficiency of the evidence to support the three findings under 161.001(b)(1)(D), (E), and (O) and the finding that the termination was in the child's best interest.

On original submission, we determined the evidence was both legally and factually sufficient to support the trial court's findings that Mother and Father failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child, N.G. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *In re N.G.*, 575 S.W.3d 370, 377, 380 (Tex. App.—Dallas 2018), *rev'd*, –- S.W.3d —, 2019 WL 2147263 (Tex. May 17, 2019). In doing so, we declined to address Mother's and Father's issues challenging the sufficiency of the evidence to support the trial court's findings that they knowingly placed or knowingly allowed N.G. to remain in conditions or surroundings that endanger the physical or emotional well-being of N.G., or that they engaged in conduct or knowingly placed N.G. with persons who engaged in conduct that endangers the physical or emotional well-being of N.G., because only one finding alleged under section 161.001(b)(1) of the family code is necessary to support a judgment terminating parental rights. *See* FAM. § 161.001(b)(l)(D), (E); *In re N.G.*, 575 S.W.3d at 377, 380. In addition, we determined the evidence was legally and factually sufficient to support the trial court's findings termination of Mother's and Father's rights is in the best interest of N.G. *In re N.G.*, 575 S.W.3d at 378, 381. As to Mother's complaint concerning the quashing of the subpoena issued to N.G., we concluded Mother failed to preserve the issue for appeal, and we discerned no bases for reversal on that account in any event.

Only Mother filed a petition for review of this Court's decision with the Texas Supreme Court. In her petition, Mother argued this Court failed to address whether the trial court's orders were specific enough to support termination under Section 161.001(b)(1)(O), and argued that because this Court did not address the legal and factual sufficiency of the trial court's findings under subsections D and E of section 161.001(b)(1), concerning endangering the physical or emotional well-being of N.G., Mother could face a future termination of her parental rights as to

another child under Section 161.001(b)(1)(M) without a determination concerning the sufficiency of the evidence on the predicate issue,[5] an issue Mother did not raise in her briefing with this Court.

The supreme court reversed our judgment affirming the trial court's termination of Mother's parental rights, concluding due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under Section 161.001(b)(1)(D) or (E) of the family code and this Court failed to address the specificity of the court order establishing the steps or actions necessary for the parent to obtain return of the child. The supreme court remanded the case to us for further proceedings consistent with its opinion.[6]

We requested that Mother and the Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services ("Department") submit supplemental briefing responsive to the supreme court's opinion. Neither Mother nor the Department supplemented their briefing.

## BACKGROUND

Mother and Father met in 2008 and married before N.G. was born in 2011. Five months after N.G. was born, Father went to prison for two years for a drug offense. He was released in April 2014. In January 2015, Mother went to jail. She was released six months later. In September 2015, Father was arrested and jailed for a violation of probation he received in connection with a robbery charge. He was released from that confinement on December 13, 2015.

On October 25, 2015, a referral was made to the Department as to Mother and N.G., who was approximately four years old at that time. The report included allegations that Mother and others living in the home they occupied were using drugs in front of, or around, the child and that

---

[5] Section 161.001(b)(1)(M) provides a court may order termination of the parent–child relationship if the court finds by clear and convincing evidence that the parent has had his or her parent–child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Section 161.001(b)(1)(D) or (E). *See* FAM. § 161.001(b)(1)(M). Only one finding alleged under section 161.001(b)(1) is necessary to judgment of termination. *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.).

[6] Because the supreme court reversed our judgment as it relates to Mother only, on remand we limit our discussion here to Mother's issues.

there were signs of hoarding in the home. A Department investigator visited the home and, although there was some clutter and mess, she saw nothing dangerous. Mother told the Department investigator that she was employed; that the home she, N.G., and her adult son lived in was owned and occupied by a woman named T.B.; and that she was not presently using drugs though she had used methamphetamine and cocaine in the past. At that time, Mother refused to provide an oral swab for a drug test. The Department investigator saw N.G. sleeping and he appeared to be unharmed. After the visit, the Department investigator made several unsuccessful attempts to get Mother to submit to a drug test.

Less than a month later, in November 2015, the Department investigator learned from Mother's probation officer that Mother had tested positive for illegal drug use. Mother admitted to using methamphetamine once in October 2015, but stated N.G. was not around at the time. On November 10, the Department investigator, Mother, and Mother's adult daughter met to determine where N.G. would be placed while Mother was in jail for failing her drug test while on probation. At that meeting, Mother agreed to submit to a drug test, and it was determined that N.G. would stay with his maternal grandmother ("Grandmother") who would supervise any visits with Mother. Mother also consented to having N.G. tested for drugs. His test returned positive for illegal drugs. Despite her agreement to be tested, Mother did not submit to testing.

On November 17, 2015, the Department filed its original petition for protection of the child and for temporary managing conservatorship. The Department sought removal of N.G. because Mother had tested positive for methamphetamine, Father was currently incarcerated, Mother failed to take a drug test after numerous requests from the Department, and there was a long history of Department referrals. N.G. was removed from Grandmother's home in February 2016 after the Department discovered N.G. was not with Grandmother and could not be located for several days and because Grandmother was uncooperative and refused to allow N.G. to participate in therapy

–4–

or be evaluated. N.G. was then placed with a paternal uncle until May. That placement ended because the paternal uncle no longer wished to care for N.G. N.G. was then placed in foster care and has remained with the same foster family since, although he was placed in respite for thirty-five days due to an injury N.G. sustained while roughhousing with another child.

On May 12, 2016, the Department amended its petition to request the termination of Mother's and Father's parental rights to N.G. Although Mother and Father were married at the time the Department filed its original petition, the two divorced, and Father remarried before the case proceeded to trial. During the course of litigation, the trial court ordered both Mother and Father to participate in several education programs, drug and alcohol treatment, and counseling services.[7]

The case proceeded to trial, which took place over several days during the summer of 2017.[8] At the close of Department's case, Mother requested directed verdicts on six of the grounds for termination set forth in the Department's first amended petition. In response, the Department abandoned those challenged grounds.[9] Father requested directed verdicts on several of the grounds asserted against him, and the trial court granted a directed verdict as to some of the grounds. At the end of trial, the trial court terminated Mother's and Father's parental rights and later signed an

---

[7] On May 10, 2016, Mother was ordered to participate and successfully complete or provide: parenting education; psychological evaluation; a list of all prescription medications; bonding assessment of Mother and N.G.; counseling; drug/alcohol assessment and follow all recommendations; inpatient drug/alcohol treatment program approved by CPS and follow all after-care recommendations; random drug and alcohol urinalysis/hair strand tests and oral swabs; maintain stable, suitable housing; and maintain suitable, stable, legal employment.

The same day, Father was ordered to participate and successfully complete or provide: parenting education; psychological evaluation; a list of all prescription medications; bonding assessment of Father and N.G.; counseling; drug/alcohol assessment and follow all recommendations; inpatient drug treatment program approved by CPS and follow all after-care recommendations; random drug and alcohol urinalysis/hair strand tests and oral swabs; anger management or adult aggression management class approved by CPS; New Day Fatherhood Program or Father FOCUS program; maintain stable, suitable housing; and maintain suitable, stable, legal employment.

[8] The trial court's final order states the trial court heard proceedings on May 16, June 1, June 15, June 16, June 20, July 5, and August 25, but the reporter's record reflects the following dates: May 16, June 1, June 15, June 16, June 20, June 22, June 26, and August 25. We note that the June 22 date is when the trial court conferenced with N.G. in chambers. The other date discrepancy between June 26 and July 5 is not material to our determination of the issues presented.

[9] Mother did not move for directed verdict on the statutory grounds set forth in subsections D, E, and O of section 161.001(B)(1). Among the statutory grounds the Department abandoned was subsection P concerning used of a controlled substance in a manner that endangered the health or safety of the child and failure to complete a court-ordered substance abuse treatment program. FAM. § 161.001(b)(1)(P)(i).

order terminating the parental rights of both based on findings under subsections D, E, and O of section 161.001(b)(1) of the family code. *See* FAM. § 161.001 (b)(1)(D), (E), and (O). The order also appointed the Department as the permanent managing conservator of N.G.

**DISCUSSION**

A court may terminate a parental relationship if it finds by clear and convincing evidence (1) one or more statutory grounds for termination and (2) that termination is in the child's best interest. FAM. § 161.001(b)(1)–(2). Clear and convincing evidence is proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* § 101.007. Here, the trial court found the Department had proven by clear and convincing evidence that Mother had:

> knowingly placed or knowingly allowed the child [N.G.] to remain in conditions or surroundings that endanger the physical or emotional wellbeing of the child; [TEX. FAM. CODE § 161.001(b)(l)(D)]

> engaged in conduct or knowingly placed the child [N.G.] with persons who engaged in conduct that endangers the physical or emotional well-being of the child; [TEX. FAM. CODE § 161.001(b)(l)(E)]

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child [N.G.] who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [TEX. FAM. CODE § 161.001(b)(l)(O)]

The trial court also found that the termination of Mother's parental rights was in the best interest of N.G. *Id.* § 161.001(b)(2).

Mother raised legal and factual sufficiency issues challenging these statutory grounds for termination and the trial court's best interest finding and the supreme court remanded the case to us to address subsections D and E, and, if necessary, to address the specificity of the order that is the subject of subsection O. Mother did not challenge this Court's conclusion regarding the best

–6–

interest finding in her petition to the supreme court. Consequently, the supreme court did not address that finding and we will not further discuss it here.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a "firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

In a factual sufficiency review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Under section 161.001(b)(1)(D), parental rights may be terminated if clear and convincing evidence supports a finding that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for termination of parental rights if clear and convincing evidence supports a finding that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E). Both grounds require proof of

–7–

endangerment. *In re N.E.*, No. 05-15-00361-CV, 2015 WL 5244334, at \*11 (Tex. App.—Dallas Sept. 8, 2015, pet. denied) (mem. op.).

Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Instead, it means to expose to loss or injury; to jeopardize. *Id.* A parent engaging in conduct that leads to the parent's imprisonment is evidence of endangerment. *Id.* Similarly, evidence of a parent's drug usage, or evidence that another parent allowed a child to be around a parent or other persons using drugs, is evidence of endangerment. *Dupree v. Texas Dep't of Prot. & Reg. Servs.*, 907 S.W.2d 81, 84–86 (Tex. App.—Dallas 1995, no writ).

The focus of an allegation under (D) is the suitability of the children's living conditions. *In re M.C.*, 352 S.W.3d 563, 566 (Tex. App.—Dallas 2011, no pet.). To prove endangerment under (D), the Department had to prove that Mother knowingly placed or knowingly allowed N.G. to remain in conditions or surroundings that endangered N.G.'s physical or emotional well-being. *See id.* Although the focus under (D) is N.G.'s environment, Mother's conduct is nevertheless relevant because a parent's conduct can create an environment that endangers the physical and emotional well-being of a child. *In re J.D.B.*, 435 S.W.3d 452, 463–64 (Tex. App.—Dallas 2014, no pet.).

The focus of an allegation under (E) is the parent's conduct, either by act or omission. *Id.* An allegation under (E) must be supported by evidence of a voluntary, deliberate, and conscious course of conduct by the parent and not an isolated act or omission. *Id.* "Endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of [illegal] drug usage." *Boyd,* 727 S.W.2d at 533. If the evidence shows a course of conduct which has the effect of endangering the physical or emotional well-

being of the child, a finding under (E) is supportable." *Id.* As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *Id.* at n.4.

The following evidence establishes that Mother knowingly allowed N.G. to be in conditions or surroundings that endangered his physical or emotional well-being and that she knowingly placed N.G. with persons who engaged in conduct that endangered his physical or emotional well-being.

I.      Evidence of Illegal Drug Use

The Department investigator testified they removed N.G. from the custody of Mother because remaining in her care presented a danger to N.G. The child's positive drug test indicated there was an immediate danger to his physical health and safety and Mother refused to take drug tests.

In addition, the evidence established N.G. was removed from Mother's custody following Mother's positive drug test while on probation. At that time, Mother and N.G. were living in T.B.'s home. Father testified that he, Mother, T.B., and other individuals who came and went from the home smoked methamphetamine. In addition, the evidence established N.G. tested positive for illegal drugs. Consequently, Mother allowed N.G. to remain in conditions or surroundings, and with persons who engaged in conduct, that endangered the physical well-being of N.G.

Mother claimed to have only used drugs recreationally, "maybe once or twice a year," until around 2008. However, Mother had been charged with possession of illegal substances and placed on probation for four years. Mother also admitted she relapsed in October 2015 when she was on probation. She claimed that when she relapsed she used drugs in a hotel room and that N.G. was not present. She claimed to have been clean since that time. Contrary to Mother's claim, she

tested positive for methamphetamines in August 2016. In addition, Father testified he had seen Mother use drugs at least once since her professed relapse and that she was still actively using drugs at the time of trial.

The Department caseworker assigned to the case testified that Mother was non-compliant with the Department's requests for drug testing. The caseworker further testified that when Mother tested positive for methamphetamines in August 2016, she admitted "that she had been using methamphetamines around the child . . ."

The psychologist who performed a psychological evaluation of Mother testified Mother told her she started doing drugs in her early thirties. She was introduced to methamphetamine by her first husband. She stated she had been arrested for theft, deception of a document, and possession of drugs. Mother indicated to the psychologist that CPS became involved because she did not have N.G. in the right place at the right time, as she was using drugs. The psychologist's diagnosis of Mother was "methamphetamine abuse, neglect of a child and then legal circumstances." The psychologist further testified that Mother did not take ownership for her choices, and was inclined to blame others for her circumstances. She also testified that when parents are using drugs, they are not emotionally present for their children, may physically be absent, leaving the children to fend for themselves. Such physical or emotional remoteness is very difficult for a child of N.G.'s age. In addition to evaluating Mother, the psychologist evaluated N.G. She diagnosed him with unspecified anxiety disorder, "neglect of a child," and a provisional diagnosis of borderline intellectual functioning.

## II.    Evidence Concerning Living Environment

Father testified that when they lived in T.B.'s home there were seven or eight people living there who would "just come and go." Father described the home as "dirty" and "dangerous."

When asked to expand on what he meant by "dangerous," Father said the house was "not a good environment," [j]ust a dirty house." Mother agreed that the house was not suitable for a child.

At trial, the caseworker testified Mother's housing situation is not stable because she frequently changes homes. She indicated Mother has not demonstrated basic parenting skills in regards to providing a safe and stable physical home environment. The caseworker further testified that, based on the testimony of both parents, it is apparent that N.G. has never really lived with them. He had been continuously passed off to whichever relative or friend was willing to have him. Mother often left N.G. with his half-sister, who was twenty-four years old at the time N.G. was removed. N.G.'s half-sister was engaged to a man who had an extensive criminal history, some Child Protective Service ("CPS") history, as well as a felony drug conviction. Mother also left N.G. with Grandmother. When the Department conducted a home study at Grandmother's home to determine whether N.G. could be placed with her when he was removed, the study was denied because of concerns related to extensive CPS history and extensive drug history.

A clinical psychologist who examined N.G. in June 2016 testified that the results of her testing of N.G.'s intellect were consistent with a child who has been neglected.

III.     Evidence of Incarceration

Both Mother and Father were frequently incarcerated before N.G.'s removal. Five months after N.G. was born, Father went to prison for two years for a drug offense until his release in April 2014. Mother then went to jail from February to June of 2015. In September 2015, Father was arrested for a probation violation on an underlying robbery charge, and he was not released until December 13, 2015. Father was arrested again in June 2016 and incarcerated until November 2016. During the pendency of this case, Mother was arrested six times and faced a child endangerment charge related to N.G. Mother had an upcoming criminal trial in July and it was uncertain whether she would be incarcerated.

Both Mother and Father were doing drugs in the home with the owner, both had significant confinement in jail, unstable living arrangements, and neither had a valid explanation for N.G.'s positive drug test. *In re J.T.G.*, 121 S.W.3d 117, 126–27 (Tex. App.—Fort Worth 2003, no pet.) (evidence sufficient to support termination based on mother's continuous drug use, suicide attempt, and exposure of child to violence in the home); *Dupree*, 907 S.W.2d at 85 (evidence sufficient to support termination where Dupree had prior criminal record for drug offenses, a pending criminal charge, and knew of mother's drug use around the child).

Based on the record, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Mother knowingly allowed N.G. (1) to remain in conditions or surroundings, and (2) engaged in conduct or knowing placed N.G. with persons who engaged in conduct, which endangered the physical and emotional well-being of N.G. *See Dupree*, 907 S.W.2d at 85–86. The evidence is therefore legally sufficient to support the trial court's finding under both subsections D and E.

Viewing all of the evidence before us, including the evidence contrary to the judgment, and giving due consideration to evidence the factfinder could have reasonably found to be clear and convincing, we conclude the factfinder could have reasonably formed a firm belief or conviction that Mother knowingly allowed N.G. (1) to remain in conditions or surroundings, and (2) engaged in conduct or knowing placed N.G. with persons who engaged in conduct, which endangered the physical and emotional well-being of N.G. *See id.* at 86. The evidence is therefore factually sufficient to support the trial court's finding under both subsections D and E.

We need not address the specificity of the court order establishing the steps or actions necessary for the parent to obtain return of the child, which is tied to termination under Section 161.001(b)(1)(O), because the evidence is sufficient to support termination of Mother's paternal rights under Sections 161.001(b)(1)(D) and (E). TEX. R. APP. P. 47.1. Only one finding alleged

under section 161.001(b)(1) of the family code is necessary to support a judgment terminating parental rights. *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.).

## CONCLUSION

We affirm the trial court's order terminating Mother's parental right to N.G.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

171255F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF N. G., A CHILD

No. 05-17-01255-CV

On Appeal from the 469th Judicial District Court, Collin County, Texas
Trial Court Cause No. 469-54747-2012.
Opinion delivered by Justice Schenck, Justices Partida-Kipness and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court terminating mother's parental rights to N.G. is **AFFIRMED**.

It is **ORDERED** that appellee recover its costs of this appeal from appellant mother.

Judgment entered this 30th day of August, 2019.