352 S.W.3d 563 (2011)
In the Interest of M.C., I.C., and U.C., Minor Children.
No. 05-11-00042-CV.
Court of Appeals of Texas, Dallas.
October 17, 2011.
*564 Joseph Sumner, Public Defender's Office, Assistant Public Defender, Dallas, TX, for Appellant.
Brenda Green, Assistant District Attorney, Juvenile Division, Dallas, TX, for Appellee.
Before Justices FITZGERALD, FRANCIS, and LANG-MIERS.[1]

OPINION
Opinion By Justice LANG-MIERS.
In this accelerated appeal Father appeals from the trial court's order terminating *565 his parental rights to two of his three minor children. On appeal Father argues that the evidence is legally and factually insufficient to support the trial court's findings that he committed acts justifying termination. We affirm.

BACKGROUND
The Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services (the Department) sought conservatorship of Father's three minor children, M.C., I.C., and U.C., and termination of both parents' parental rights based on the alleged commission of various acts set forth in section 161.001(1) of the Texas Family Code. Mother voluntarily relinquished her parental rights to the two younger children, I.C. and U.C. After a nonjury trial, the trial court found that appellant committed acts set forth in subsections (D) and (E) of section 161.001(1), and that termination of Father's parental rights to I.C. and U.C. was in the children's best interest.[2]
Father timely filed a statement of points. In two issues on appeal Father argues that the evidence is legally and factually insufficient to support the trial court's findings that Father committed acts set forth in subsections (D) and (E) of section 161.001(1). Father does not challenge the trial court's findings that termination of Father's parental rights is in the best interest of I.C. and U.C.

APPLICABLE LAW AND STANDARD OF REVIEW
"Involuntary termination of parental rights implicates fundamental constitutional rights." In re S.P., 168 S.W.3d 197, 202 (Tex.App.-Dallas 2005, no pet.). But "[w]hile parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." In re C.H., 89 S.W.3d 17, 26 (Tex.2002). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. Holick v. Smith, 685 S.W.2d 18, 20-21 (Tex.1985); In re C.M.B., 204 S.W.3d 886, 894 (Tex. App.-Dallas 2006, pet. denied).
In a termination proceeding brought under section 161.001 of the family code, the petitioner must establish one ground listed under section 161.001(1) and must also prove that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (West Supp. 2010); In re J.L., 163 S.W.3d 79, 84 (Tex.2005). Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Id. § 101.007 (West 2008). "Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child." In re C.S.L.E.H., No. 02-10-00475-CV, 2011 WL 3795226, at *6-7 (Tex. App.-Fort Worth Aug. 25, 2011, no pet.) (mem. op.) (citing In re J.F.C., 96 S.W.3d 256, 263 (Tex.2002)); see also In re J.A.J., 243 S.W.3d 611, 615-16 (Tex.2007) (contrasting standards for termination and modification).
*566 In evaluating the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. In re J.P.B., 180 S.W.3d 570, 573 (Tex.2005). We review all the evidence in the light most favorable to the finding and judgment. Id. We resolve any disputed facts in favor of the finding if a reasonable fact-finder could have done so. Id. We disregard all evidence that a reasonable fact-finder could have disbelieved. Id. We consider undisputed evidence even if it is contrary to the finding. Id. That is, we consider evidence favorable to termination if a reasonable fact-finder could, and we disregard contrary evidence unless a reasonable fact-finder could not. Id.
In reviewing the evidence for factual sufficiency, we give due deference to the fact-finder's findings and do not supplant the judgment with our own. In re H.R.M., 209 S.W.3d 105, 108 (Tex.2006). We determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that the termination of the parent-child relationship is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001; In re C.H., 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. In re H.R.M., 209 S.W.3d at 108.

ANALYSIS
In his first issue, Father generally argues that the evidence is both legally and factually insufficient to support the trial court's endangerment finding under family code section 161.001(1)(D). Endangerment means to expose to loss or injury, to jeopardize. See In re J.K.F., 345 S.W.3d 706, 711 (Tex.App.-Dallas 2011, no pet.). To prove endangerment under subsection (D), the Department had to prove that Father knowingly placed or allowed I.C. and U.C. to remain in conditions or surroundings that endangered their physical or emotional well-being. See TEX. FAM. CODE ANN. § 161.001(1)(D). Subsection (D) focuses on the suitability of the child's living conditions. See In re M.C.T., 250 S.W.3d 161, 168 (Tex.App.-Fort Worth 2008, no pet.). Under (D), it must be the environment itself that causes the child's physical or emotional well-being to be endangered, not the parent's conduct. Id.
The Department filed its petition in this case in 2009. At that time, I.C. and U.C. were living with Mother and Father was living nearby. Vicki Adams, a Child Protective Services (CPS) case worker, testified that although Father was not living with the children, Father knew what was happening at the house, and that Mother was dealing drugs:
Q. Did he ever discuss the fact that he knew what was happening at the house where [Mother] and the children were living?
A. Yes.
Q. What did he tell you about that?
A. Well, he would tell me that things weren't right. They were fighting all the time; that she was dealing drugs; that he was very concerned about everything that went on over there.
Q. But he did nothing about it?
A. Right.

*567 Q. And this is all the time while the children were still living in this location with [Mother]?
A. Right.
According to Father, he and Mother were "common-law married" for 13 years until they separated in 2005. When Father moved out, he knew that Mother was very violent:
Q. When you left you were aware that [Mother] was very violent; is that right?
A. Yes.
Q. You were aware that she spit and kicked and cursed and everything; is that right?
A. Yes.
Q. And you were aware that she did that in front of the children?
A. Yes.
Father also knew that Mother was using and selling drugs:
Q. You were also aware that [Mother] used drugs, weren't you?
A. Yes.
Q. What kind of drugs has she used?
A. Mainly marijuana.
Q. Now, did you also indicate to Ms. [Adams] at one point that you knew [Mother] was selling drugs?
A. Yes.
Q. How did you know that she was selling drugs out of the house?
A. The neighborhood that she lived in is where I grew at, and everybody knew who she was and knew about my children. They would tell me. A couple of times, going by there, I noticed the traffic or whatever. I knew what type of situation there was.
Q. I fact, she's in jail now on a charge of manufacturing and delivery of a controlled substance; is that right?
A. Yes.
Adams also testified that I.C. and U.C. have "serious behavior problems" and are on some "pretty serious medications to modify behaviors." For example, with respect to U.C., who was 10 years old at the time of the termination hearing, Adams testified:
[U.C.] is very aggressive and threatening towards others. Sheif she does not get her way she will kick, bite, punch, spit, curse at people. She also engages in a considerable amount of sexually acting out. She will lick her lips provocatively at people, shake her bottom-side in front of people. She has asked other children to suck her breasts. She's come in and out of the shower room naked and made sure other people would see her. And hershe's had to be restrained a number of times while she was at Devereux and Victoria due to how violent she would get with staff members. And the teachers at school, they had to restrain her there, also.
And with respect to I.C., who was 12 years old at the time of the termination hearing, Adams testified,
[I.C.] is very defiant and resist[a]nt and hostile. He refuses to follow directions and tries to order everyone else around. Hehe will engage in things like not taking care of his belongings, not picking up after himself, tearing his room all up, refusing to dress for schoolyou know, like a set of clothes that they're supposed to wear. He refuses to put those on. He's had to be restrained at school a number of times requiring as many as three people to restrain him at school. There will be time periods when it seemed like his behavior was improving, but then it wouldhas led, again, to a higher level than it had been before.
*568 On appeal Father notes that he was not living with the children when they were removed from Mother's home by CPS. Father also notes that he was not the cause for their removal from Mother's home. But under section 161.001(1)(D), the focus is not on the responding parent's conductthe focus is on the child's living conditions. See In re M.C.T., 250 S.W.3d at 168. Father also offers reasons that he did not have the children come live with him. For example, Father notes that before the children were removed by CPS, he "was not permitted to be around the children" due to a pending charge of injury to a child that was later dismissed. Father also notes that he "could not obtain employment, could not obtain housing and did not have transportation." But the fact that the children could not live with Father did not preclude the trial court from finding that Father knowingly allowed the children to remain in an environment that endangered their well-being. Father knew that Mother was "very violent" and was using and selling drugs; but there is no evidence that Father took any actions to remove the children from Mother's home from the time he left in 2005 until the time the children were removed by CPS in 2009.
After reviewing all of the evidence under the appropriate standards of review, we conclude the trial court could reasonably form a firm belief or conviction that Father knowingly allowed I.C. and U.C. to remain in conditions or surroundings that endangered their physical or emotional well-being. See, e.g., In re C.S.L.E.H., 2011 WL 3795226, at *6-7 (upholding termination under section 101.106(1)(D) because "the trial court could have considered Father's failure to take action to protect his children from [mother's] drug abuse as sufficient evidence to establish that he knowingly allowed the children to remain in conditions or surroundings that endangered their well-being").
We do not address Father's second issue, in which he argues that the evidence is legally and factually insufficient to support the trial court's findings under section 161.001(1)(E) that Father engaged in conduct or knowingly placed I.C. and U.C. with persons who engaged in conduct that endangered their physical or emotional well-being, because "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." In re A.V., 113 S.W.3d 355, 362 (Tex.2003); see also TEX.R.APP. P. 47.1.

CONCLUSION
We conclude that the evidence was sufficient to support the trial court's finding that Father knowingly allowed I.C. and U.C. to remain in conditions or surroundings that endangered their physical or emotional well-being. We affirm the trial court's termination order.
NOTES
[1] Justice Kerry FitzGerald was not present for oral argument but participated in the disposition of this appeal. Chief Justice Carolyn Wright was present for oral argument but did not participate in the disposition of this appeal.
[2] The trial court did not terminate the parents' parental rights to the oldest child, M.C., and instead appointed the Department as M.C.'s permanent managing conservator and the parents as possessory conservators. Father does not appeal the trial court's ruling with respect to M.C.