

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00347-CV

**IN THE INTEREST OF L.J.G.**, S.A.M., and A.C.F., Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00420
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Patricia O. Alvarez, Justice
         Irene Rios, Justice
         Liza A. Rodriguez, Justice

Delivered and Filed: November 18, 2019

AFFIRMED

In this parental rights termination case, the trial court terminated B.G.'s parental rights to

L.J.G. and A.F.'s parental rights to S.A.M. and A.C.F. [i]  Each father appeals the trial court's order.

B.G. challenges the trial court's statutory grounds and best-interest-of-the-children findings.  A.F.

challenges the trial court's paternity and subsection (N) findings.  We affirm the trial court's order.

## BACKGROUND

On October 11, 2017, the Department of Family and Protective Services received a report

alleging illegal drug abuse by Mom and neglectful supervision and physical abuse of the children.[ii]

The Department received three subsequent referrals for Mom's abuse of the children and continued

---

[i] To protect the minors' identities, we use aliases for appellants and the children.  *See* TEX. R. APP. P. 9.8.
[ii] Mom did not appeal.  We limit our recitation of the facts to those pertaining to B.G., A.F., and the children.

illegal drug use. The Department investigated and found that Mom had untreated mental illness, used illegal drugs, and physically abused and threatened violence against the children.

On March 1, 2018, the day before the Department petitioned for conservatorship of the children, Mom placed the children with her father. Later, the Department created service plans for Mom, B.G., and A.F. Both B.G. and A.F. were incarcerated for the entire period of the case; neither completed their service plans. After several status hearings the case proceeded to trial.

Following a two-day bench trial, the trial court found by clear and convincing evidence that B.G.'s course of conduct met the grounds in Family Code section 161.001(b)(1)'s subsections (D), (E), and (N), A.F.'s course of conduct met the grounds in subsection (N), and terminating B.G.'s and A.F.'s parental rights were in the children's best interests. B.G. and A.F. appeal.

### EVIDENCE REQUIRED, STANDARDS OF REVIEW

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

With regard to the testifying witnesses, the trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *cf. In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

### BASES FOR TERMINATING B.G.'S PARENTAL RIGHTS

**A.    Statutory Grounds Findings**

The trial court found B.G.'s course of conduct met the grounds in subsections (D), (E), and (N). B.G. asserts that the evidence was legally and factually insufficient to support the trial court's statutory grounds findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N).

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex.

2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.). But "due process requires an appellate court to review and detail its analysis as to termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code when challenged on appeal." *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019).

## B.      Section 161.001(b)(1)(D)

Subsection (D) allows for termination of a parent's rights if, before the child was removed, *see In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (relevant period), the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," TEX. FAM. CODE ANN. § 161.001(b)(1)(D). In the context of the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

"A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109 (alteration in original) (quoting *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). "[A] single act or omission" may support terminating a parent's rights under subsection (D). *Id.* (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)). "Further, a fact-finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.).

## C.      Section 161.001(b)(1)(E)

Subsection (E) allows for termination of a parent's rights if, before or after the child was removed, *see In re R.S.-T.*, 522 S.W.3d at 109 (relevant period); *In re S.R.*, 452 S.W.3d at 360, the

parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "Under subsection E, the evidence must show the endangerment was the result of the parent's conduct, including acts, omissions, or failure to act." *In re S.R.*, 452 S.W.3d at 360 (requiring a course of conduct rather than a single act). Although incarceration alone does not necessarily constitute engaging in conduct to endanger the child, a parent's "imprisonment is certainly a factor to be considered by the trial court on the issue of endangerment." *Boyd*, 727 S.W.2d at 533; *accord In re S.R.*, 452 S.W.3d at 360; *In re S.F.*, 32 S.W.3d 318, 322 (Tex. App.— San Antonio 2000, no pet.).

## D. B.G.'s Actions, Course of Conduct

### 1. Other Witnesses' Testimony

B.G. appeared at trial by telephone. He heard the maternal grandfather's, Mom's, and the case worker's testimony about how Mom has untreated mental health issues including bipolar disorder and depression that have affected her "on and off" since she was a teenager. Her depression has been so severe that she has cut herself on several occasions and has attempted suicide "a few times," with the most recent attempt occurring when L.J.G. was about two years old. Mom acknowledged she has repeatedly refused her ordered services because she does not want or need them. Mom said she and B.G. had a ten-year relationship, and although B.G. was not L.J.G.'s biological father, he put his name on L.J.G.'s birth certificate. Mom was physically and verbally abusive to L.J.G., she used illegal drugs regularly, and L.J.G. has begun using drugs and following a similar path to Mom.

### 2. B.G.'s Testimony

When B.G. was called, he testified that he has been incarcerated for twenty months on a possession of a controlled substance conviction, he expects to have a parole hearing in about four

months, and he has another fifteen months remaining on his sentence. He testified he was L.J.G.'s father and he had had a relationship with her since her birth. He knew L.J.G. had been "acting out." He did not approve of L.J.G. being placed with her maternal grandfather because of the way the grandfather "treats his daughter [Mom]." He observed, "I've never seen somebody so cold to just, you know, turn his back on his daughter—[a]nd I've never seen somebody just name calling and belittling somebody that is your daughter." He added "I think my daughter [L.J.G.] would go and is going through the same thing while she's over there [at the maternal grandfather's home], because I could just tell."

### 3. *Termination under Subsection (D)*

From the testimony, the trial court could have reasonably formed a firm belief or conviction that B.G. allowed L.J.G. to remain in an environment that endangered L.J.G.'s physical or emotional well-being. Mom testified she had a ten-year relationship with B.G., and B.G. testified he had maintained a relationship with L.J.G. since she was born. Mom and her father testified that Mom had untreated bipolar disorder and depression. Mom's father testified that Mom attempted suicide when L.J.G. was about two years old, which was during Mom's relationship with B.G.

Despite having heard this testimony about Mom, her mental illness, and her attempted suicide, B.G. did not express any surprise or shock or testify that he was unaware of Mom's untreated bipolar disorder, her untreated depression, or her attempted suicide. Further, B.G. testified that he has known Mom's father "for a long time" and had observed their father-daughter relationship. He had "seen the way he [Mom's father] treats [Mom]," he disapproved of it, and he thought L.J.G. was "going through the same thing while she's over there." B.G. also knew L.J.G. was now "acting out."

Given this undisputed evidence, the trial court could have made a reasonable inference that over the ten-year relationship with Mom and the then thirteen-year relationship with L.J.G., B.G.

interacted regularly with Mom, observed her behaviors, and had to have known that Mom had serious untreated mental health issues that put L.J.G. at risk. *See In re A.C.*, 560 S.W.3d 624, 632 (Tex. 2018) (allowing inferences arising from evidence to support the trial court's finding); *In re D.G.*, No. 02-17-00355-CV, 2018 WL 1414726, at *6 (Tex. App.—Fort Worth Mar. 22, 2018, no pet.) (mem. op.) (concluding that the trial court's reasonable inferences supported its finding).

The trial court could have reasonably concluded that B.G. did not act to protect L.J.G. from injury by seeking to remove L.J.G. from Mom's home or ensure L.J.G. was living in a safe environment. *Cf. In re M.C.*, 352 S.W.3d 563, 568 (Tex. App.—Dallas 2011, no pet.); *In re Z.C.J.L.*, No. 14-13-00115-CV, 2013 WL 3477569, at *13 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet.). B.G.'s failure to act to protect L.J.G. was sufficient evidence to support termination under subsection (D). *See In re R.S.-T.*, 522 S.W.3d at 109; *In re Z.C.J.L.*, 2013 WL 3477569, at *13; *In re M.C.*, 352 S.W.3d at 568.

### 4. *Termination under Subsection (E)*

The trial court could also have reasonably formed a firm belief or conviction that—given B.G.'s course of conduct, including his incarceration for possession of a controlled substance, and his resulting inability to personally protect L.J.G. from engaging in illegal drug use or (in B.G.'s view) potential emotional abuse from her maternal grandfather—B.G.'s course of conduct resulted in L.J.G. being placed with persons who were endangering L.J.G.'s physical or emotional well-being. *See Boyd*, 727 S.W.2d at 533; *In re S.R.*, 452 S.W.3d at 360; *In re S.F.*, 32 S.W.3d 318, 322 (Tex. App.—San Antonio 2000, no pet.).

### 5. *Termination under Section 161.001(b)(1)(N)*

Having already determined the evidence was legally and factually sufficient to support the trial court's findings under subsections (D) and (E), we need not address the trial court's finding under subsection (N). *See* TEX. R. APP. P. 47.1; *In re A.V.*, 113 S.W.3d at 362.

**E.** **Best Interest of the Child**

B.G. also challenges the sufficiency of the evidence for the trial court's finding that terminating his parental rights is in L.J.G.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). The Family Code statutory factors[5] and the *Holley* factors[6] for best interests of the children are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to L.J.G.'s best interest. We note that the trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony," *see City of Keller*, 168 S.W.3d at 819, and it was free to believe or disbelieve witness testimony.

*1. Service Plan Compliance*

B.G. insisted he never received a copy of his service plan, but his case worker testified she sent him a copy of the plan and other letters. While he was incarcerated, B.G. took classes on parenting, drug education, basic craft training, construction site safety, and basic electronic systems technician, but he did not complete the courses on his service plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

*2. Providing Home, Meeting Needs for L.J.G.*

B.G. testified he wanted to provide a safe home for L.J.G. and to be part of her life, but he was incarcerated for possession of illegal drugs, which L.J.G. was drifting into, and he was not sure when he would be released. When he is released, B.G. hopes to live with his mother and begin looking for a job, but as his testimony indicated, his ability to provide a safe, stable home for L.J.G. and provide for her other needs is, at best, uncertain. Further, the trial court could have inferred—from B.G.'s incarceration for illegal drug possession and his drug treatment while he was incarcerated—that B.G. had a history of illegal drug use which might recur, *see In re D.M.*, 452 S.W.3d at 472, and if L.J.G. was placed with B.G., B.G.'s relapse into illegal drug use could

- 7 -

have a devastating effect on L.J.G.'s physical and emotional needs and safety now and in the future. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

### 3. *B.G.'s Care for L.J.G.*

Since he was incarcerated, B.G. had only visited with L.J.G. once—when his sister brought her to see him. He was not ordered to pay child support, but he did not offer any evidence that he was providing in any way for L.J.G.'s needs. B.G. testified that since he had been incarcerated, he did not know where L.J.G. was living, so he sent letters to L.J.G. via a former Department case worker, but no corroborating evidence or testimony was presented. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)).

### 4. *Options, Recommendations*

L.J.G. is in a residential treatment facility, and her needs are not being fully met. She wants to live with her paternal aunt. She needs permanency and a stable home environment, which the adoption placements being evaluated could provide, but she cannot be adopted unless B.G.'s rights are terminated. The Department is investigating placement options for L.J.G., including her grandfather and her paternal aunt. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (2); *Holley*, 544 S.W.2d at 372 (factors (A), (B), (C), (D), (G), (H)).

The Department case worker and the children's ad litem opined that it would be in L.J.G.'s best interest for B.G.'s parental rights to be terminated.

Considering all the evidence under the two evidentiary standards, we conclude the trial court could have formed a firm belief or conviction that terminating B.G.'s parental rights to L.J.G. was in L.J.G.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

**BASES FOR TERMINATING A.F.'S PARENTAL RIGHTS**

On appeal, A.F. raises two issues. First, he asserts the evidence is legally and factually insufficient to support the trial court's finding that his course of conduct met the grounds in subsection (N). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N). Second, he argues there was no evidence at trial that he was S.A.M.'s father. We begin with the statutory ground (N) finding.

## A. Challenge to Statutory Ground Finding

The trial court found A.F.'s course of conduct met the grounds in subsection (N)—that A.F. constructively abandoned the children—and that terminating A.F.'s parental rights to S.A.M. and A.C.F. was in the children's best interests.

A.F. challenges only one element of (N): that the Department "made reasonable efforts to return the child[ren] to [him]." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N)(i).[iii] He argues that the Department's efforts were not reasonable because the trial court knew his mailing address, but the Department did not attempt to contact him while he was incarcerated which deprived him of the ability to make arrangements for the children's placement until he was released from prison.

### 1. Section 161.001(b)(1)(N)

Under subsection (N)(i), the Department must "ma[k]e reasonable efforts to return the child to the parent." TEX. FAM. CODE ANN. § 161.001(b)(1)(N); *accord In re A.Q.W.*, 395 S.W.3d 285, 288 (Tex. App.—San Antonio 2013, no pet.). "Implementation of a family service plan by the Department is ordinarily considered a reasonable effort to return a child to its parent." *In re A.Q.W.*, 395 S.W.3d at 288 (citing *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.)). If the parent is incarcerated, the Department may make a reasonable effort to return a child to its parent by placing the child with a family member. *In re N.R.T.*, 338 S.W.3d

---

[iii] Because A.F. does not challenge any other element of subsection (N) or the trial court's best interest findings, we need not address those questions.

667, 674 (Tex. App.—Amarillo 2011, no pet.) (citing *In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.)); *see In re A.T.L.*, No. 04-15-00379-CV, 2015 WL 6507807, at *5 (Tex. App.—San Antonio Oct. 28, 2015, pet. denied) (mem. op.).

### 2. Discussion

In the Department's original petition for protection of the children, it expressly warns A.F. that his parental rights to A.C.F. may be terminated. A.F. acknowledged that he had been served with the Department's petition on March 12, 2018. At the March 29, 2019 trial on the merits, the Department case worker testified that she mailed A.F. his service plan several months before trial, and she had also sent other letters to him, but she never received any responses. *See In re M.R.J.M.*, 280 S.W.3d at 505 (opining in a non-incarcerated parent case that "[t]he State's preparation and administration of a service plan for the parent constitutes evidence that the State made reasonable efforts to return the child to the parent"). The case worker also testified that S.A.M. and A.C.F. had been placed with A.F.'s father-in-law, an extended family member, and the children were doing well. *See In re A.T.L.*, 2015 WL 6507807, at *5 (concluding that "the Department's preparation and administration of a service plan, in conjunction with its consideration of relative placements, [was legally and factually sufficient evidence to] support[] the trial court's finding that the Department made reasonable efforts to return the child to appellant").

We conclude the evidence was legally and factually sufficient to support the trial court's finding by clear and convincing evidence that the Department made reasonable efforts to return the children to A.F. *See id.* We overrule A.F.'s first issue.

### B. No Evidence of S.A.M.'s Father

In his second issue, A.F. contends the trial court could not have properly terminated his parental rights to S.A.M. under either section 161.001 or section 161.002. A.F. acknowledges that

the trial court took judicial notice of the non-hearsay contents of its record, but he argues there was no evidence at trial that he was S.A.M.'s father.

Section 161.002(b) states "[t]he rights of an alleged father may be terminated if . . . after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160." TEX. FAM. CODE ANN. § 161.002(b); *see In re S.J.R.-Z.*, 537 S.W.3d 677, 681 (Tex. App.—San Antonio 2017, pet. denied).

A.F. acknowledged he was served with the Department's petition on March 12, 2018, and the petition identifies A.F. as S.A.M.'s alleged father. The trial court found by clear and convincing evidence that A.F. "did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit." *See* TEX. FAM. CODE ANN. § 161.002(b)(1); *In re S.J.R.-Z.*, 537 S.W.3d at 681.

The appellate record conclusively establishes that A.F. was served with the petition and failed to file an admission of paternity or a counterclaim for paternity, *see* TEX. FAM. CODE ANN. § 161.002(b)(1); *In re M.J.M.G.*, 543 S.W.3d 862, 864 (Tex. App.—San Antonio 2017, no pet.), and we note that no best interest finding was required, *see In re M.J.M.G.*, 543 S.W.3d at 865; *In re S.J.R.-Z.*, 537 S.W.3d at 683. The evidence supporting the trial court's section 161.002(b)(1) finding was legally and factually sufficient. We overrule A.F.'s second issue.

## CONCLUSION

Having reviewed the record under the applicable standards of review, we conclude the evidence pertaining to B.G. was legally and factually sufficient to support the trial court's findings by clear and convincing evidence (1) of at least one predicate ground for termination and (2) that termination of his parental rights was in L.J.G.'s best interest.

We also conclude that the evidence was legally and factually sufficient to support the trial court's findings by clear and convincing evidence that A.F. constructively abandoned S.A.M. and A.C.F., and A.F. failed to establish paternity for S.A.M.

We affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that (1) the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Appellant's course of conduct met the following criteria or grounds:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [and]

. . . .

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:

(i) the department has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment.

*Id.* § 161.001(b)(1).

[3] <u>Legal Sufficiency</u>. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

[4] <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

    (5)    whether the child is fearful of living in or returning to the child's home;

    (6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

    (7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

    (8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;

    (9)    whether the perpetrator of the harm to the child is identified;

    (10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

    (11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

    (12)    whether the child's family demonstrates adequate parenting skills; . . . and

    (13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A)  the desires of the child;

    (B)  the emotional and physical needs of the child now and in the future;

    (C)  the emotional and physical danger to the child now and in the future;

    (D)  the parental abilities of the individuals seeking custody;

    (E)  the programs available to assist these individuals to promote the best interest of the child;

    (F)  the plans for the child by these individuals or by the agency seeking custody;

    (G)  the stability of the home or proposed placement;

    (H)  the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

    (I)  any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).