

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00413-CV

**IN THE INTEREST OF A.D.G.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00632
Honorable Charles E. Montemayor, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: December 4, 2019

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her child A.D.G.[i] Mom challenges the trial court's statutory grounds findings (under subsections (D), (N), and (O)), but not the best-interest-of-the-child finding. We affirm the trial court's order.

## BACKGROUND

In late March 2018, the Department of Family and Protective Services received a report alleging neglect by Mom of her child A.D.G.[ii] Because Mom was hospitalized after a seizure and there was no one to care for A.D.G., the Department petitioned to remove A.D.G. from the home,

---

[i] To protect the minor's identity, we use aliases for appellant and the child. *See* TEX. R. APP. P. 9.8.
[ii] Dad did not appeal. We focus our recitation of the facts on those pertaining to Mom and A.D.G. as they relate to the trial court's statutory ground (D) and best-interest-of-the-child findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

and the trial court granted the petition. In a three-day bench trial, the Department alleged that Mom knowingly placed or allowed A.D.G. to remain in endangering circumstances, she constructively abandoned A.D.G., and she failed to complete her service plan. The trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code section 161.001(b)(1)'s subsections (D), (N), and (O), and terminating Mom's parental rights was in A.D.G.'s best interest. Mom appeals.

## EVIDENCE REQUIRED, STANDARDS OF REVIEW

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

With regard to the testifying witnesses, the trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *cf. In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

## BASES FOR TERMINATING MOM'S PARENTAL RIGHTS

### A.      Statutory Grounds Findings

Mom asserts that the evidence was legally and factually insufficient to support the trial court's statutory grounds findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (N), (O).

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.). But "due process requires an appellate court to review and detail its analysis as to termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code when challenged on appeal." *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019).

**B.**       **Section 161.001(b)(1)(D)**

Subsection (D) allows for termination of a parent's rights if, before the child was removed, *see In re R.S.-T.*, 522 S.W.3d at 108 (relevant period), the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," TEX. FAM. CODE ANN. § 161.001(b)(1)(D). In the context of the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

"[E]ndangerment can be exhibited by both actions and failures to act." *Lumpkin v. Dep't of Family & Protective Servs.*, 260 S.W.3d 524, 528 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109 (alteration in original) (quoting *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). "[A] single act or omission" may support terminating a parent's rights under subsection (D). *Id.* (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)). "Further, a fact-finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.).

**C.**       **Mom's History, Course of Conduct**

The trial court heard testimony from Mom, two Department case workers, two of Mom's counselors, and the foster mother. We summarize the evidence pertaining to whether Mom knowingly placed or knowingly allowed A.D.G. to remain in conditions or surroundings which endanger[ed A.D.G.'s] physical or emotional well-being." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

1. *Mom's Medical History*

    a. <u>Seizure Disorder</u>

Mom is in her early twenties, she has epilepsy, and she has been having seizures since she was about three years old. Mom knows that she has tonic-clonic (grand mal) seizures, and she will be hospitalized if her seizure lasts more than thirty minutes. She knows she will be incoherent for 15–30 minutes after a seizure. In the roughly five months between A.D.G.'s birth and her removal from the home, Mom suffered four seizures. In a recent seizure, for the first time, she went into respiratory failure and had to be intubated.

    b. <u>Mental Disorders</u>

Mom denies she has bipolar disorder, but the testifying Qualified Mental Health Professional confirmed Mom's diagnoses include bipolar I disorder, post-traumatic stress disorder, and borderline personality disorder. Mom acknowledged she has wanted to hurt herself, and she is currently receiving counseling for anxiety, mania, and depression. During the pendency of the case, Mom has been hospitalized for depression and PTSD at least three times, remaining hospitalized for about two weeks each time.

2. *History of Sexual Abuse, Family Violence*

Mom testified she was sexually abused as a child by her grandfather for years, and when she lives at home, her mother physically and verbally abuses her. Mom attributes her PTSD to the sexual and physical abuse she has suffered. Despite the family violence, Mom has at least twice returned home because she had nowhere else to go. Mom stayed at her mother's house even though her mother hit her and verbally abused her because "at least I got a roof over my head and I got food." Eventually, Mom took A.D.G. and left to stay at a shelter because of family violence from her mother. But after A.D.G. was removed, Mom went back to live with her mother despite the abuse because she was "scared to be out on the streets."

**D.     A.D.G.'s Special Needs**

A.D.G. was born prematurely at twenty-six weeks, and she was hospitalized in the neonatal intensive care unit for the first two months of her life.  After A.D.G. was allowed to go home, Mom had difficulty feeding A.D.G.  Mom claimed her mother "started force-feeding [A.D.G.] four ounces when she was just itty-bitty and she just only needed 30 milliliters, and so, she stopped eating."  Mom tried breastfeeding, but her mother "wouldn't allow me to."  Because of A.D.G.'s failure to eat, a surgical procedure placed a gastrostomy tube (G-tube) in her stomach through which A.D.G. could receive food and medications.  *See A.L.G.A. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19-00086-CV, 2019 WL 2998587, at *2 n.2 (Tex. App.—Austin July 10, 2019, pet. denied) (mem. op.) (describing a G-tube).

A.D.G. must be given her food and anti-seizure medications through the G-tube on a precise schedule.  She must be fed seven times per day in specific amounts, and she must receive her three medications twice each day.  A.D.G. sometimes pulls out her G-tube, and it must be immediately replaced to avoid danger to her.  *See In re G.A.A.-G.*, No. 14-19-00320-CV, 2019 WL 5107040, at *3 (Tex. App.—Houston [14th Dist.] Oct. 11, 2019, no pet. h.) (mem. op.) ("A prudent parent who had been trained on the use of a G-tube, as Mother had, would have immediately sought medical attention when the tube fell out . . . .").  As the foster mother noted, because of A.D.G.'s very special needs, "you have to watch her 24/7.  Somebody has to be with her all the time, all the time."  The foster mother testified she is a stay-at-home mother, her husband also knows how to care for A.D.G., and they provide A.D.G. with the full-time care she needs.

**E.     Basis for Removal**

In late March 2018, when A.D.G. was about five months old, Mom was taken to the hospital after a seizure "because they thought I was having a stroke."  While Mom was at the hospital, "she was pulling out her I.V.; she wasn't coherent, [and] she didn't know where she was

at" for a few days. Sometime during her hospitalization Mom told the hospital staff that "she was going to hang the baby from the ceiling fan."

The hospital called the Department because Mom was very disoriented, she could not care for A.D.G., and there was no one else to care for the child. The hospital kept A.D.G. at the hospital for a while because her G-tube was clogged.

Based on its investigation, the Department concluded Mom was neglecting A.D.G., and the trial court granted the Department's petition to remove A.D.G. from Mom's care.

## F.     Parties' Arguments

Mom contends the evidence was neither legally nor factually sufficient to support the trial court's findings on any of the statutory grounds. With respect to subsection (D), Mom insists "[t]here was no evidence at trial that [she] wanted to suffer a seizure or that it was her desire or intention to leave [A.D.G.] without a viable caretaker."

The Department relates many of the facts given above and argues that Mom was unable to care for herself, much less A.D.G., and the evidence supports each of the trial court's findings, including that under subsection (D).

## G.     Evidence of Endangering Conditions or Surroundings

Mom emphatically asserts that she does not want to suffer from seizures or neglect A.D.G., but that is not the legal question at issue. The issue is whether the trial court could have found by clear and convincing evidence that Mom "knowingly placed or knowingly allowed [A.D.G.] to remain in conditions or surroundings which endanger[ed A.D.G.'s] physical or emotional well-being." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re R.S.-T.*, 522 S.W.3d at 108–09. We note that the conditions or surroundings which might not endanger a healthy twelve-year-old child could endanger a medically-compromised infant. *Cf. In re A.L.M.*, 300 S.W.3d 914, 919 (Tex. App.—Texarkana 2009, no pet.) (recognizing that a child's special needs can affect the minimum

parenting ability required of the parent—under section 161.003, which is not at issue here—by opining that "[t]he needier the child, the more able the parent must be").

The Department did not have to prove that Mom knew for certain that A.D.G. would be harmed, it just needed to prove that Mom was aware of the potential for harm and allowed A.D.G. to remain in an endangering environment. *See In re R.S.-T.*, 522 S.W.3d at 109.

Mom knew she had tonic-clonic seizures, she would be unable to care for A.D.G. during the period of the seizure and for at least 15–30 minutes afterwards, and there was a chance she could suffer a tonic-clonic seizure without sufficient notice to arrange for suitable care for A.D.G. Mom also knew her own mother physically and verbally abused her and did not support her in seeking to get services to support A.D.G. Yet Mom took a two-month-old, medically at-risk A.D.G. home from the hospital to live in an abusive home environment in which there was no suitable caretaker for A.D.G. if Mom had a seizure.

Mom knew her mother actively interfered with A.D.G.'s care and would not support Mom in working services. After A.D.G. received the G-tube, Mom knew A.D.G. had even greater special needs including feeding and medicating needs, which included a medication to treat A.D.G.'s seizure disorder. Mom knew her own mother had misfed A.D.G., interfered with Mom's care for A.D.G., and was not a suitable caretaker for A.D.G.

By Mom's own admission, despite the physical and verbal abuse she suffered and the risk to A.D.G. in that environment, Mom stayed in the home for at least several weeks because "I was scared to leave and have nowhere to live. And there I knew at least I got a roof over my head and I got food."

## H. Evidence Supports Subsection (D) Finding

Mom's upbringing and medical conditions are tragic and heartbreaking. But neither the trial court nor we can ignore the risk of harm to which Mom exposed A.D.G.—given A.D.G.'s

very special needs. Mom suffers from PTSD, borderline personality disorder, bipolar I disorder, and depression—which can be successfully managed by complying with proper medical care—but there was ample evidence that Mom failed to manage her own health properly. It was the trial court's role to evaluate the witnesses' testimony, including Mom's admitted thoughts of self-harm and her statement that she was going to hang A.D.G. from the ceiling fan, in its subsection (D) finding. *See City of Keller*, 168 S.W.3d at 819; *cf. In re H.R.M.*, 209 S.W.3d at 108.

Given the evidence, including Mom's failure to successfully manage her mental health conditions; her epilepsy and breakthrough seizures; and A.D.G.'s medically fragile state on leaving the NICU, we conclude there was clear and convincing evidence that Mom knowingly exposed A.D.G. to the possibility of being left unattended and unsupervised during the period of Mom's seizures, and the possibility of some harm from Mom or others during Mom's post-seizure, mental disorientation periods. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re R.S.-T.*, 522 S.W.3d at 109. Given the evidence of Mom's suicidal thoughts and her at least momentary intent to hang A.D.G. from a ceiling fan, there was also clear and convincing evidence that Mom exposed A.D.G. to the risk of Mom—in a moment of extreme mental confusion or distress—intentionally or negligently harming A.D.G. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re R.S.-T.*, 522 S.W.3d at 109.

Again, we recognize that Mom does not wish to suffer from seizures or the multiple mental illnesses that afflict her. We also recognize that Mom's properly managed medical conditions would likely not endanger a healthy, more mature child. But given, inter alia, Mom's and A.D.G.'s respective medical conditions, *cf. In re A.L.M.*, 300 S.W.3d at 919, and Mom's decision to take a medically fragile A.D.G. into a domestic violence home situation without a backup caregiver, the trial court could have reasonably formed a firm belief or conviction that Mom knowingly placed or allowed A.D.G. to remain in an environment that endangered A.D.G.'s physical or emotional

well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re R.S.-T.*, 522 S.W.3d at 109. *Cf. In re M.C.*, 352 S.W.3d 563, 568 (Tex. App.—Dallas 2011, no pet.); *In re Z.C.J.L.*, No. 14-13-00115-CV, 2013 WL 3477569, at *13 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet.). The evidence was legally and factually sufficient to support the trial court's finding under subsection (D). *See In re R.S.-T.*, 522 S.W.3d at 109; *In re Z.C.J.L.*, 2013 WL 3477569, at *13; *In re M.C.*, 352 S.W.3d at 568.

## I.      Findings under Subsections (N), (O)

"Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Having already determined the evidence was legally and factually sufficient to support the trial court's finding under subsection (D), we need not address the subsections (N) and (O) findings. *See* TEX. R. APP. P. 47.1; *In re A.V.*, 113 S.W.3d at 362.

## J.      Best Interest of the Child

The Family Code statutory factors[5] and the *Holley* factors[6] for the best interest of a child are well known, but Mom does not challenge the sufficiency of the evidence for the trial court's finding that terminating her parental rights is in A.D.G.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## K.      Evidence is Sufficient

Considering all the evidence under the two evidentiary standards, we conclude the trial court could have formed a firm belief or conviction that terminating Mom's parental rights to A.D.G. was in A.D.G.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (b)(2); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

## CONCLUSION

Having reviewed the record under the applicable standards of review, we conclude the evidence was legally and factually sufficient to support the trial court's findings by clear and convincing evidence of the subsection (D) ground and that termination of Mom's parental rights was in A.D.G.'s best interest. We affirm the trial court's order.

Patricia O. Alvarez, Justice

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that (1) the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met the following criteria or grounds:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
> . . . .
> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> > (i) the department has made reasonable efforts to return the child to the parent;
> > (ii) the parent has not regularly visited or maintained significant contact with the child; and
> > (iii) the parent has demonstrated an inability to provide the child with a safe environment, [and]
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[3] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

[4] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

---

[5] <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child, but because Mom does not challenge the trial court's best interest finding, we do not recite them here. *See* TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified several non-exclusive factors to determine the best interest of a child in its landmark case *Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976), but because Mom does not challenge the best interest finding, we do not recite those factors here.