**REVERSE and RENDER in part; AFFIRMED in part; Remand and Opinion Filed July 1, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00103-CV**

**IN THE INTEREST OF E.D.E.L., A CHILD**

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-30070-2020**

# MEMORANDUM OPINION

Before Justices Schenck, Molberg, and Pedersen, III
Opinion by Justice Schenck

Father and Mother appeal the trial court's order terminating their parental rights to their son E.D.E.L. In two issues, Father challenges the sufficiency of the evidence to support four of the six stated statutory grounds for termination of his parental rights and the trial court's best interest finding. In two issues, Mother challenges the sufficiency of the evidence to support all of the stated statutory grounds for termination of her parental rights and the appointment of the Texas Department of Family and Protective Services (the "Department") as the sole permanent managing conservator of E.D.E.L.

For the reasons discussed herein, we affirm the trial court's order terminating Father's parental rights to E.D.E.L. and reverse the trial court's order terminating Mother's parental rights and appointing the Department the sole permanent managing conservator of E.D.E.L. We remand this case for further proceedings in accordance with this opinion. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Mother and Father are Guatemalan nationals from Villa Nueva, a mountain village located on the northwest side of Guatemala. Mother and Father, and their three children—two girls and one boy—lived in Villa Nueva with Father's parents. Mother and Father have very little formal education, and they speak Spanish only.

Due to the limited employment opportunities in Guatemala, and in particular the lack of opportunities in Villa Nueva, Mother and Father agreed that Father would emigrate to the United States and remain in the country for five years in the hopes that Father could earn enough money to build a home for his family in Guatemala and educate E.D.E.L. and his sisters. Mother and Father believed Father would be able to enter and stay in the United States legally if he was accompanied by a young child. Thus, they decided E.D.E.L., who was then three years and seven months old, would travel with Father to the United States.[1] Father paid thirty thousand quetzales,

_____

[1] Father explained, because of the proliferation of human trafficking in Mexico, he believed it would be safer to travel with his son rather than one of his daughters.

the equivalent of $4,250 U.S. dollars, to an individual described as a "coyote" who traveled with Father and E.D.E.L. to the United States border. They traveled the entire way by bus and arrived at the United States border in approximately twenty days. During the trip, Father and E.D.E.L. spent the nights in hotels and had three meals a day.

Upon arriving in the United States in May 2019, after initially being detained by immigration and customs enforcement, Father secured employment with a sponsor in Arkansas. Approximately four months later, Father found what appeared to be more lucrative work in Plano, Texas. Father and E.D.E.L. thus moved to Texas. While in Texas, Father and E.D.E.L. lived in a two bedroom apartment in Collin County with a male friend from Guatemala, two adult females and three children. Father paid rent of $500 per month, and he and E.D.E.L. slept in the closet of one of the bedrooms. While living in both Arkansas and Texas, when Father went to work, he left E.D.E.L. in the care of a woman who looked after children and who lived nearby. On a few occasions, Father took E.D.E.L. with him to work and claimed E.D.E.L. would be outside with him while he did landscape work.

After arriving in the United States, Father began abusing alcohol and became physically abusive to E.D.E.L., who was then approximately four-years old. On June 13, 2020, neighbors, or one of the individuals living in the apartment with Father and E.D.E.L., called the police to report what they suspected as child abuse. Plano Police Department Officers Casey and Longarello responded. The officers

–3–

found E.D.E.L. in a closet and noticed he had a bump on the left side of his head, as well as a small amount of blood and a cut on the top of his head. Casey and Longarello asked Father to explain what had happened. Father admitted to being intoxicated and striking his son, after his son hit him on the head two times.

An ambulance took E.D.E.L. to the hospital where he was treated and released to Child Protective Services ("CPS") and then placed in foster care.[2] Officer Casey followed the ambulance to the hospital and a CPS investigator met them there. Both Officer Casey and the CPS investigator described E.D.E.L.'s demeanor at the hospital as playful.

A few days later, CPS was able to make contact with Mother through the Guatemalan Consulate. During the pendency of the case, Father had no visitation with E.D.E.L., but Mother did. She and E.D.E.L. visited via Zoom approximately 45 times. The majority of the time, E.D.E.L. was not receptive to the visits and the foster parents and the Court Appointed Special Advocate ("CASA") volunteer had to encourage him to engage with Mother. In order to participate in the visits, Mother had to walk some distance to find cell coverage and it was often dark at the times the calls were made. E.D.E.L. would become upset when Mother would repeatedly

---

[2] A CPS supervisor described the injuries he noted as knots on the left side of E.D.E.L.'s head, a quarter-size knot directly above his ear, a shallow cut with scabbed blood on the top of his head, a large purple- and red-colored bruise on his shoulder, bruising on his upper, left shoulder blade, a scabbed scratch on his left hip, a one-inch scabbed crescent mark on his ribs, a one and a half inch light scrape on his right calf, and various scarring and marks on the back of his legs. Some of the injuries appeared to be current and some older. E.D.E.L. was COVID positive and asymptomatic. Thereafter and after an additional exam, E.D.E.L. was treated for pinworms and later underwent extensive dental work to address tooth decay likely due to malnutrition.

ask when he was coming home[3] and began bed wetting when the topic came up in a meeting with the CASA volunteer, E.D.E.L.'s attorney ad litem and a member from the Guatemalan consulate. E.D.E.L. was then referred to a counselor to address his behavioral issues, including his aggression and tantrums.

## PROCEDURAL BACKGROUND

On June 13, 2020, the Department took possession of E.D.E.L pursuant to section 262.104 of the Texas Family Code. TEX. FAM. CODE ANN. § 262.104. On June 15, 2020, the Department filed its Original Petition for Protection of the Child(ren), for Conservatorship, and for Termination in Suit Affecting the Parent–Child relationship. The Department sought to be named the temporary managing conservator of the child, alleging a physical abuse and a continuing danger to the physical health or safety of the child if returned to the parent presently entitled to possession of the child, namely the Father. On July 1, 2020, the trial court held an adversary hearing at which Father agreed to orders naming the Department the temporary managing conservator of E.D.E.L. On August 4, 2020, Father was placed on a family–service plan.

---

[3] Mother was told not to ask E.D.E.L. when he was going to come home, but Mother continued to do so.

On December 4, 2020, Father pleaded guilty to injury to a child, E.D.E.L., a third-degree felony, and was sentenced to three years' confinement with the Texas Department of Criminal Justice, Correctional Institution Division.[4]

Several status hearings were conducted during the pendency of this case, and the parties discussed the possibility of returning E.D.E.L. to Mother as the non-offending parent. In connection therewith, two home studies were conducted in Guatemala. One of the studies was conducted while Mother resided in Father's parents' home, and the other after Mother moved to her parents' home due to the Department's concern about Father returning to his parents' home upon release from incarceration and deportation. Both studies found Mother to be "a suitable family custodial resource," fit to provide adequate care and protection for E.D.E.L. and the second study specifically recommended that E.D.E.L. be returned to Mother. The Department discounted these studies because they did not take into account Father's potential presence in the home after his deportation, or the presence of other family members and continued on the course of terminating the parental rights.

A trial in this case took place before the court via Zoom over several days beginning on June 14, 2021 and ending on November 16, 2021. Mother and Father testified through interpreters. The majority of the trial focused on the best interest of the child. Because Mother does not challenge the trial court's best interest

---

[4] Due to COVID, once Father was incarcerated services were not readily available to him. Father indicated he was able to take an Alcoholic's Anonymous course in English only.

finding, we will restrict our consideration of evidence relative to the trial court's best interest finding to our discussion of Father's second issue and we will discuss the evidence that is relevant to the challenged statutory grounds for termination in our consideration of same.

At the conclusion of the trial, the court stated it was going to review all of the documents admitted into evidence and the asserted grounds for termination and would promptly issue its ruling. The trial court, in its Nunc Pro Tunc Final Order, found the Department had proven by clear and convincing evidence that Father had:

1. knowingly placed or knowingly allowed the child(ren) [E.D.E.L.] to remain in conditions or surroundings that endanger the physical or emotional wellbeing of the child(ren); [TEX. FAM. CODE § 161.001(b)(1)(D)]

2. engaged in conduct or knowingly placed the child(ren) [E.D.E.L.] with persons who engaged in conduct that endangers the physical or emotional well-being of the child(ren); [TEX. FAM. CODE § 161.001(b)(1)(E)]

3. been convicted or placed on community supervision including deferred adjudication community supervision for being criminally responsible for the death or serious injury of a child(ren) [E.D.E.L.] under the following sections of the Penal Code, or under a law of another jurisdiction that contains elements that are substantially similar to the elements of an offense under one of the following Penal Code Sections, or adjudicated under Title 3 for conduct that caused the death or serious injury of a child(ren) [E.D.E.L.] and that would constitute a violation of one of the following Penal Code sections:
. . .
*Section 22.04 (injury to a child, elderly individual, or disabled individual)*
. . . [TEX. FAM. CODE § 161.001(b)(1)(L)(ix)];

4. constructively abandoned the child(ren) [E.D.E.L.] who have been in the permanent or temporary managing conservatorship of an authorized agency for not less than six months, and the agency has made reasonable efforts to return the children [E.D.E.L.] to him, he has not regularly visited or maintained significant contact with the children [E.D.E.L.], and he has demonstrated an inability to provide the children [E.D.E.L.] with a safe environment. [TEX. FAM. CODE § 161.001(b)(1)(N),];

5. failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child(ren) [E.D.E.L.] who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child(ren's) [E.D.E.L.'s] removal from the parent under Chapter 262 for the abuse or neglect of the child(ren) [E.D.E.L.]; [TEX. FAM. CODE § 161.001(b)(1)(O)]; and

6. knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense and confinement or imprisonment and inability to care for the child(ren) [E.D.E.L.] for not less than two years from the date of filing the petition; [TEX. FAM. CODE § 161.001(b)(1)(Q)][.]

As to Mother, the trial court found the Department had proven by clear and convincing evidence that she had:

1. knowingly placed or knowingly allowed the child(ren) [E.D.E.L.] to remain in conditions or surroundings that endanger the physical or emotional wellbeing of the child(ren) [E.D.E.L.]; [TEX. FAM. CODE § 161.001(b)(1)(D)]

2. engaged in conduct or knowingly placed the child(ren) [E.D.E.L.] with persons who engaged in conduct that endangers the physical or emotional well-being of the child(ren) [E.D.E.L.]; [TEX. FAM. CODE § 161.001(b)(1)(E)]; and

3. failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return

of the child(ren) [E.D.E.L.] who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child[ren's] [E.D.E.L.'s] removal from the parent under Chapter 262 for the abuse or neglect of the child(ren) [E.D.E.L.]; [TEX. FAM. CODE § 161.001(b)(1)(O)][.]

The trial court also found that the termination of both Mother's and Father's parental rights was in the best interest of E.D.E.L and named the Department the sole permanent managing conservator of E.D.E.L. *Id.* § 161.001(b)(2). This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

The involuntary termination of parental rights involves fundamental constitutional rights. *In re G.M.*, 596 S.W.2d 846 (Tex. 1980). The Supreme Court has stated that a natural parent's desire for—and his right to—the companionship, care, custody, and management of his child is an interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). A termination decree is final and irrevocable, divesting for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Courts have recognized that termination of a parent's rights to his child is "traumatic, permanent, and irrevocable." *In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003). For these reasons, the Texas Family Code and the Due Process Clause of the United States Constitution require that grounds for termination of parental rights be

proved by clear and convincing evidence. FAM. § 161.001; *Santosky*, 455 U.S. at 753–54. And for the same reasons, we strictly construe involuntary termination statutes in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Clear and convincing evidence is proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. FAM. § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002).

A court may terminate a parental relationship if it finds by clear and convincing evidence (1) one or more statutory grounds for termination and (2) that termination is in the child's best interest. FAM. § 161.001(b)(1)–(2). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

## STANDARD OF REVIEW

The heightened burden of proof in parental termination cases gives rise to a concomitantly heightened standard of appellate review. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). In our legal sufficiency review, we consider all the evidence in the light most favorable to the finding, though mindful of the heightened burden of proof in the trial court. *In re J.F.C.*, 96 S.W.2d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the

–10–

factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting this review, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude the evidence is legally insufficient. *Id.*

In a factual sufficiency review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## DISCUSSION

### I. Father

In his first issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings as to certain statutory grounds for termination of his and Mother's parental rights and the trial court's best interest finding.[5] Father admits that two of the predicate statutory grounds for termination of his parental rights exist. Namely subsections (L) and (Q) (having been convicted

---

[5] Given our resolution of Mother's issues, we need not determine whether Father has standing to challenge the termination of her rights, and we pretermit discussion of Father's assertions in this regard. TEX. R. APP. P. 47.1.

for the serious injury of E.D.E.L. under section 22.04 of the penal code and knowingly engaging in criminal conduct that has resulted in Father's conviction of an offense and imprisonment and inability to care for E.D.E.L.). FAM. § 161.001(b)(1)(L), (Q). Only one finding alleged under section 161.001(b)(1) of family code is necessary to support a judgment terminating parental rights. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 232.

### A. Termination of Parental Rights Pursuant to Sections 161.001(b)(1)(D) and (E)

#### 1. Applicable Law

Absent termination pursuant to subsections (D) and (E), an admission, such as Father's, to conduct authorizing termination pursuant to subsections (L) and (Q), would end our inquiry as to the first element of a suit affecting the parent–child relationship. Because the trial court's order also terminated Father's parental rights pursuant to subsections (D) and (E), and because terminating a parent's rights under subsections (D) and (E) can be used as a basis to terminate the parent's rights to another child under subsection (M),[6] terminating rights under (D) and (E) has significant collateral consequences. *N.G.*, 577 S.W.3d at 234. A parent has due process rights regarding the care, custody, and control of his children, and due process requires a heightened standard of review of a trial court's finding under

---

[6] Under subsection (M), a court may terminate parent's rights if the court finds, by clear and convincing evidence, that the parent has had his "parent–child relationship terminated with respect to another child based on finding that the parent's conduct was in violation of Subsection (D) or (E) or substantially equivalent provisions of the law of another state." FAM. § 161.001(b)(1)(M).

subsections (D) and (E), even when another ground is sufficient for termination, because of the potential consequences for parental rights to a different child. *Id.* at 235. The due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under subsections (D) or (E). *Id.* at 237.

Under section 161.001(b)(1)(D) of the family code, parental rights may be terminated if clear and convincing evidence supports a finding that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(D). Endanger means *more than a threat* of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533.

The focus of an allegation under subsection (D) is the suitability of the children's living conditions. *In re M.C.*, 352 S.W.3d 563, 566 (Tex. App.—Dallas 2011, no pet.). To prove endangerment under subsection (D), the Department has to prove that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being. *See id.* Parental conduct, however, is also relevant to the child's environment under subsection (D). *In re J.D.B.*, 435 S.W.3d 452, 463 (Tex. App.—Dallas 2014, no pet.). "Inappropriate, abusive, or unlawful conduct by persons who live in the

–13–

child's home is part of the 'conditions or surroundings' of the child's home under subsection (D)." *Id.* at 464; *see also In re W.S.*, 899 S.W. 2d 772, 776 (Tex. App.—Fort Worth 1995, no writ) ("environment" refers not only to the acceptability of the living conditions but also to a parent's conduct in the home).

Section 161.001(b)(1)(E) allows for termination of parental rights if clear and convincing evidence supports a finding that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(E). The focus of an allegation under subsection (E) is the parent's conduct, either by act or omission. *J.D.B.*, 435 S.W.3d at 463–64. An allegation under (E) must be supported by evidence of a voluntary, deliberate, and conscious course of conduct by the parent and not an isolated act or omission. *Id.* If the evidence shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under (E) is supportable. *Boyd*, 727 S.W.2d at 534. As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re J.O.A.*, 283 S.W.3d 336, 346 n.4 (Tex. 2009).

Because the evidence concerning these two statutory grounds for termination is interrelated, we consolidate our examination of it. *In re C.V.L.*, 591 S.W.3d 734, 750 (Tex. App.—Dallas 2019, pet. denied).

### 2. Application of the Law to the Facts

E.D.E.L. was removed because Father physically abused him. Father admitted that he hit E.D.E.L. with a leather belt while he was intoxicated. E.D.E.L. suffered injuries as a result. Father also admitted that he hit E.D.E.L. for urinating in his work truck. The evidence further established E.D.E.L. was traumatized by the physical abuse and was afraid of Father. A parent who, by commission or omission, exposes the child to or fails to protect the child from the risk of physical injury or emotional harm engages in conduct that endangers the child. *In re J.N.G.*, No. 14-15-00389-CV, 2015 WL 5634366, at *6 (Tex. App.—Houston [14th Dist.] Sept. 24, 2015, no pet.) (mem. op.); *see also In re X.J.R.*, No. 04-20-00368-CV, 2021 WL 112175, at *4 (Tex. App.—San Antonio Jan. 13, 2021, pet. denied) (mem. op.) (evidence Dad punched child in the stomach, spanked children with a belt, hit them in the face and choked them, and physically abused Mom sufficient to support predicate findings under subsections (D) and (E)).

Considering all of the evidence under the appropriate standards of review, we conclude the trial court could have formed a firm belief or conviction that Father knowingly allowed E.D.E.L. (1) to remain in conditions or surroundings, and (2) engaged in conduct, which endangered the physical and emotional well-being of E.D.E.L. *See Dupree v. Tex. Dep't of Prot. & Reg. Servs.*, 907 S.W.2d 81, 85–86 (Tex. App.—Dallas 1995, no writ). The evidence is therefore legally and factually sufficient to support the trial court's finding under subsections (D) and (E).

**B.** **Termination of Parental Rights Pursuant to Sections 161.001(b)(1)(N) and (Q)**

We need not address Father's arguments concerning termination of his parental rights under subsections (N) and (O) because the evidence is sufficient to support termination of his paternal rights under subsections (D) and (E) and Father concedes termination under subsections (L) and (Q). TEX. R. APP. P. 47.1. Only one finding alleged under section 161.001(b)(1) of the family code is necessary to support a judgment terminating parental rights when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

We overrule Father's first issue.

**C.** **Best Interest of the Child**

In his second issue, Father challenges the legal and factual sufficiency of the evidence to support a finding that termination of his parental rights was in the best interest of E.D.E.L.[7]

### 1. Applicable Law

A judicial determination of the "best interest" of a child "is not dependent upon, or equivalent to, a finding that the child has been harmed by abuse or neglect or is in danger of such harm." *In re M.J.P.*, No. 05-16-01293-CV, 2017 WL 655955,

---

[7] Father also contends that the evidence is insufficient to support the trial court's finding that termination of Mother's parental rights was in the best interest of E.D.E.L. We need not address this contention given our agreement with Mother's evidentiary challenge. *See* TEX. R. APP. P. 47.1.

at \*6 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.).  Rather, "best interest" is "a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion."  *Id.* (quoting *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding)); *see also In re C.R.*, 263 S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.) ("[P]arental rights may not be terminated merely because a child might be better off living elsewhere.").

The supreme court has identified nine factors that may assist our review of a best-interest finding:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the person seeking custody; (5) the programs available to assist the person seeking custody in promoting the best interest of the child; (6) plans for the child by the person seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  The *Holley* factors focus on the best interest of the child, not the best interest of the parent, and are not exhaustive.  *Dupree*, 907 S.W.2d at 86; *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

A best interest finding need not be supported by evidence of every *Holley* factor, particularly if there is undisputed evidence, as in this case, that the parental relationship endangered the child's safety.  *See C.H.*, 89 S.W.3d at 27.  Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest.  *C.V.L.*, 591 S.W.3d

–17–

at 753. On the other hand, the presence of scant evidence relevant to each factor will generally not support such a finding. *C.H.*, 89 S.W.3d at 27. Further, the same evidence can be relevant to both section 161.001(b)(1) termination grounds and the child's best interest. *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.—Dallas 2014, pet. denied). We conclude the first, second, third, sixth, seventh, and eighth *Holley* factors are relevant to the best interest finding in this case.[8]

The first *Holley* factor, the child's desires, is generally considered neutral where, as here, the child did not testify due to his young age. *See In re C.V.L.*, 591 S.W.3d at 754. Nevertheless, here the evidence established Father's actions caused emotional trauma to E.D.E.L., that E.D.E.L. is afraid of Father, and refers to him as "mean daddy." Thus, this factor weighs in favor of the trial court's best interest finding as it concerns Father, especially when considered in connection with other *Holley* factors. *See J.E.D.*, No. 11-19-00166-CV, 2019 WL 5617645, at * 2 (Tex. App.—Eastland Oct. 24, 2019, no pet.) (mem. op.) (court considered Father's actions causing emotional trauma to child, evidence child has nightmares and depression, is scared of Father, and says he "hates" Father and does not want him to come home in determining the best interest of the child).

With respect to the second *Holley* factor—the emotional and physical needs of E.D.E.L.—the record establishes that E.D.E.L. was six years' old at the

---

[8] *Holley* factors 4 (parental abilities), 5 (programs available to person seeking custody) and 9 (excuse for acts of parent) do not inform our decision on the best interest finding because Father is not seeking custody of the child and admits that he had no excuse for his actions that injured E.D.E.L.

conclusion of the trial in this case. He will, therefore, require constant emotional and physical support for many years. He is dependent solely upon a caregiver for his needs and for protection. The evidence established Father has not attended E.D.E.L.'s needs. Thus, this factor weighs in favor of terminating Father's paternal rights.

Next, we note that the same evidence that supports the trial court's findings of predicate violations under subsections (D), (E), (L) and (Q)–endangerment and criminal conduct—support the trial court's finding that termination of Father's parental rights is in the best interest of E.D.E.L. *See J.E.D.*, 2019 WL 5617645, at * 2 (court considered trial court's findings pursuant to subsections (E), (L) and (Q) in determining the best interest of the child). Specifically, those finding are very significant as to the third and eighth *Holley* factors—physical danger to the child in the future and acts of parent that indicate the parent–child relationship is not a proper one. *See Rogers v. Dep't. of Family & Protective Servs.*, 175 S.W.3d 370, 378 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd w.o.j.). We conclude the third and eighth *Holley* factors weigh in favor of terminating Father's parental rights.

With respect to the sixth and seventh *Holley* factors, concerning the plans for the child and stability of the proposed placement, the evidence established E.D.E.L. was thriving in foster care, that at the time of trial there were no concrete plans for adoption, it will take time to obtain permanent residency or citizenship status, and there is a possibility that E.D.E.L. could be deported. Father's proposed placement

is with Mother. There was conflicting evidence as to whether Father would reunite with Mother when he is released from incarceration and deported. In addition, the Department presented evidence Mother had not educated herself on how to help E.D.E.L. deal with the trauma he suffered as a result of Father's abuse, did not seem to even acknowledge or understand E.D.E.L. suffered emotional trauma, and E.D.E.L. did not appear to be bonded to Mother. We conclude these *Holley* factors neither weigh in favor or against the trial court's best interest finding.

Our *Holley* factor analysis leads us to the conclusion that a reasonable factfinder could have reasonably formed a firm belief or conviction that termination of Father's parental rights was in E.D.E.L.'s best interest. The evidence is, therefore, factually and legally sufficient to establish that termination was in E.D.E.L.'s best interest. We overrule Father's second issue.

## II. Mother

In her first issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings on the three statutory grounds for termination of her parental rights. Mother does not challenge the trial court's best interest finding.

### A. Termination of Parental Rights Pursuant to Sections 161.001(b)(1)(D) and (E)

#### 1. Applicable Law

As stated *supra* in section I. A. 1., subsections (D) and (E) both require proof of endangerment. Subsection (D) addresses the child's surroundings and environment while subsection (E) addresses parental misconduct. *J.D.B.*, 435 at 463. Subsection (D) is not a basis for terminating parental rights if the parent was unaware of the endangering environment. *In re A.L.H.*, 468 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

### 2.      Application of the Law to the Facts

The Department contends that Mother knowingly endangered E.D.E.L. by allowing him to travel to the United States and live with Father, pointing to the risks associated with the trip and the mistreatment leading to the termination of Father's parental rights. Both contentions fail for similar reasons. As detailed below, the Department introduced no evidence, and certainly not clear and convincing evidence, that Mother had any knowledge of Father's lack of fitness or that E.D.E.L. would be unsafe in his care.

We start with the conditions obtaining in the Plano apartment that led to Father's arrest. The evidence established E.D.E.L. lived in an apartment with Father, three other adults, and three children and that Father and E.D.E.L. slept in one of the bedroom's closet. While a criminalist with the Plano Police Department noted what appeared to be blood on the bathroom sink, mirror, toilet, paper towels and on an article of clothing, and saw approximately ten empty beer bottles in the apartment, she indicated that the apartment was not cluttered, was slightly unkempt, but not

extremely dirty. To the extent any of these conditions could be considered dangerous in the first instance, the Department produced no evidence Mother knew about any of these conditions prior to E.D.E.L.'s removal. *See A.L.H.*, 468 S.W.3d at 746. Subsection (D) unambiguously requires proof that Mother knowingly exposed E.D.E.L. to an endangering environment. *Id.* at 747. The Department failed to meet its burden in this respect.

While the Department faulted Mother for not inquiring into E.D.E.L.'s living accommodations in the United States and supervision when Father was working, it is apparent from the record that Mother entrusted the care of her son to Father and the Department presented no evidence suggesting Mother should have suspected Father would subject the child to dangerous living conditions.[9] Mother testified that she spoke with Father and E.D.E.L. often and no evidence was presented that Mother was alerted to any issue with respect to E.D.E.L. Moreover, as to the Department's criticism of Mother with respect to the care of E.D.E.L. while Father worked, the Department presented no evidence that E.D.E.L. was harmed while in the care of these individuals, let alone any evidence that the individuals to whom E.D.E.L.'s care was entrusted were unfit or otherwise posed a threat to E.D.E.L.

The Department further contends that the fact that E.D.E.L. had tooth decay due to malnutrition and pinworms and poor hygiene supports the trial court's finding

---

[9] The Department did not present any evidence of abusive tendencies of Father prior to entering the United States.

with respect to subsection (E) as to Mother in Guatemala. While this evidence is quite probative as to Father, as we have noted, the Department failed to present any evidence that Mother knew about these conditions, let alone had the means and opportunity to remedy these issues and chose not to do so. The Department presented no evidence that dental care was available for the child in Guatemala, that the child lacked adequate nutrition and while he lived in Guatemala, or that Mother was aware E.D.E.L. had pinworms and ignored same. And clearly being poor, in and of itself, is not a ground for termination of parental rights. *In re A.N.*, No. 02-14-00206-CV, 2014 WL 5791573, at *18 (Tex. App.—Fort Worth Nov. 6, 2014, no pet.) (mem. op.).

With respect to E.D.E.L.'s traveling to the United States with Father, once again, the Department points to no evidence that Mother was aware of any issue with Father's care, something even our law presumes to be in E.D.E.L.'s best interest. *See In re C.J.C.*, 603 S.W.3d 804, 812 (Tex. 2020) (presume fit parent acts in best interest of child). Instead, it points only to risks inherent therewith.

Mother testified that she allowed Father to take E.D.E.L. with him because she believed it was more likely Father could legally enter the United States if the child was with him. The evidence established Mother and Father made this decision in an attempt to improve their family's life, including that of E.D.E.L. The plan was for Father and E.D.E.L. to stay in the United States for five years until Father could earn enough money to provide a home for his family in Guatemala. To be sure,

–23–

Mother's acknowledgement of the danger associated with E.D.E.L.'s travel to the United States is some evidence of awareness of the danger associated with emigration. Those dangers, of course, are inherent with the journey and, critically, were confronted with Father's presence and supervision. If awareness of a danger alone was clear and convincing evidence of endangerment, every person immigrating to this county with a child, legally or illegally, could, for that reason alone, face termination of their parental rights.

The evidence established Father arranged travel to the United States through a coyote. The trip was well planned, and the risks associated with same were mitigated thereby. Even E.D.E.L.'s counselor acknowledged her belief that simply letting E.D.E.L. travel from Guatemala to the United States would not be basis to terminate Mother, the parent staying behind's, parental rights. Had Mother and Father simply handed E.D.E.L. over to an unknown person or a person known to be reckless or dangerous to escort to the United States, we would have a very different record.

Having reviewed the record in this case, we conclude the Department did not present evidence Mother knowingly placed or knowingly allowed E.D.E.L. to remain in conditions or surroundings which endangered the physical or emotional well being of the child or engaged in a voluntary, deliberate, and conscious "course of conduct" that endangered E.D.E.L.'s physical and emotional well-being.

–24–

Accordingly, we conclude there is no evidence to support termination of Mother's parental rights under subsections (D) and (E).

**B. Termination of Parental Rights Pursuant to Section 161.001(b)(1)(O) – Failure to Complete Services**

A trial court's order under family code section 161.001(b)(1)(O) is "a mandate or directive that establishes some steps or actions necessary for the parent to obtain return of the child who is in the Department's custody." *N.G.*, 577 S.W.3d at 238. A failure to complete services can serve as a predicate act for involuntary termination if the Department proves by clear and convincing evidence that the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months *as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.*

FAM. § 161.001(b)(1)(O) (emphasis added). The Texas Supreme Court has held that subsection (O) requires the Department to prove that the child was removed from his or her parent because of abuse or neglect. *In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013); *see also In re A.T.*, No. 05-19-00346-CV, 2019 WL 4126603, at *8 (Tex. App.—Dallas Aug. 30, 2019, no pet.) (mem. op.) (evidence that child was living with Mother, not Father, at the time of removal "undermines application of subsection (O)" where only Mother's conduct led to removal); *In re M.K.*, No. 05-18-01297-CV, 2019 WL 2283886, at *4 (Tex. App.—Dallas May 29, 2019, no pet.) (mem. op.) (same); *R.J.O. v. Tex. Dep't of Family & Protective Servs.*, No. 03-13-

00478-CV, 2013 WL 6060778, at *1 (Tex. App.—Austin Nov. 13, 2013, no pet.) (mem. op.) (evidence insufficient to terminate father's rights under section (O) when children were in mother's custody when they were removed, father was not living in house with children, and they were not removed from father's care).

The Department offered evidence that E.D.E.L. was placed in the conservatorship of the Department as a result of abuse of Father, *not Mother.* At the time of the referral and removal, E.D.E.L. was in Father's sole custody and care. We conclude the evidence is insufficient to support termination of Mother's parental rights under section 161.001(b)(1)(O) because the removal had nothing to do with claims of abuse or neglect by Mother.[10]

Because the evidence is legally insufficient to support the trial court's findings of predicate grounds for termination of Mother's paternal rights, we sustain Mother's first issue.

## CONSERVATORSHIP

In her second issue, Mother urges because the evidence is insufficient to support termination of her parental rights, the trial court erred by naming the Department the sole permanent managing conservator of E.D.E.L.

We review the trial court's conservatorship order for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The issue of sole managing

---

[10] Moreover, had subsection (O) been a potential basis for termination of Mother's parental rights, the record reflects that, due to the pandemic and hurricanes in Guatemala, services were not available to Mother where she resided.

–26–

conservatorship was part of a larger proceeding that resulted in termination of the parents' parental rights. We have concluded that the trial court's termination of Mother's parental rights was not support by the evidence. Accordingly, Mother's pre-termination status as temporary possessory conservator of E.D.E.L. should be reinstated. *See M.K.*, 2019 WL 2283886, at *6. Likewise, the Department's pre-termination status as temporary managing conservator of E.D.E.L. should be reinstated. *Id.* In the absence of termination of both of E.D.E.L.'s parents' rights, appointing the Department as sole permanent managing conservator would be an abuse of discretion. *Id.* Consequently, we sustain Mother's second issue and remand the conservatorship issue for a new trial. *See In re F.E.N.*, 579 S.W.3d 74, 75 (Tex. 2019) (affirming court of appeals decision to remand issue of conservatorship for a new trial after reversing trial court's termination of Father's parental rights).

## CONCLUSION

We conclude the evidence is legally and factually sufficient to support the trial court's Final Order terminating Father's parental rights to E.D.E.L. and we affirm the trial court's Final Order in that regard. We conclude the evidence is legally insufficient to support termination of Mother's parental rights pursuant to subsections (D), (E), and (O). We further conclude the trial court abused its discretion in appointing the Department the sole permanent managing conservator of E.D.E.L. Accordingly, we reverse that portion of the trial court's Final Order terminating Mother's parental rights to E.D.E.L. and render judgment denying the

–27–

Department's request to terminate Mother's parental rights. We further reverse the Final Order of the trial court naming the Department the sole permanent managing conservator of E.D.E.L., render judgment reinstating the Department as the temporary managing conservator of E.D.E.L. and Mother as the temporary possessory conservator of E.D.E.L., and remand the issue of permanent conservatorship to the trial court for a new trial.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

220103F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF E.D.E.L., A CHILD,

No. 05-22-00103-CV

On Appeal from the 469th Judicial District Court, Collin County, Texas Trial Court Cause No. 469-30070-2020.
Opinion delivered by Justice Schenck. Justices Molberg and Pedersen, III participating.

In accordance with this Court's opinion of this date, the final order of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's final order terminating Mother's parental rights to E.D.E.L. and the portion of the trial court's final order naming the Department the sole permanent managing conservator of E.D.E.L. We **RENDER** judgment reinstating the Department as the temporary managing conservator of E.D.E.L. and Mother as the temporary possessory conservator. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 1st day of July 2022.